UNITED STATES of America,
Plaintiff-Appellee,

v.

William James BIBBS, Ivory Lee Wilson,
and Roscoe Wilson,
Defendants-Appellants.

No. 76–4195.

United States Court of Appeals,
Fifth Circuit.

Dec. 19, 1977.

Rehearing Denied Jan. 18, 1978.

Stanley M. Lane, Tampa, Fla. (Court-appointed), for Bibbs.

Robert E. Puterbaugh, Clinton A. Curtis, Lakeland, Fla., for Wilson.

Jack T. Edmund, Bartow, Fla., for Roscoe Wilson.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Walter W. Barnett, Vincent F. O'Rourke, Attys., Drew S. Days, III, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before THORNBERRY, Circuit Judge, SKELTON, Senior Judge *, and HILL, Circuit Judge.

* Senior Judge of the United States Court of Claims, sitting by designation.

JAMES C. HILL, Circuit Judge:

The defendants were convicted of holding certain persons to involuntary servitude in contravention of 18 U.S.C. § 2 and § 1584. Defendant Ivory Lee Wilson was convicted of holding Richard Lee Brown, Charles Vonzell Brown, Elliot Johnson, and Thomas Bethea to involuntary servitude. Defendant Roscoe Wilson was convicted of holding Richard Lee Brown and Elliot Johnson to involuntary servitude. Defendant William Bibbs was convicted of holding Richard Lee Brown, Charles Vonzell Brown, and Elliot Johnson to involuntary servitude. On this appeal, the defendants challenge their convictions, claiming that they are based on insufficient evidence; that the trial judge improperly admitted testimony concerning an inconsistent statement made by a defense witness subsequent to her testimony; and that the trial judge improperly excluded evidence of witnesses' and victims' criminal convictions more than ten years old. We hold that these allegations of error are meritless, and we affirm the district court.

Defendant Ivory Lee Wilson was in the agricultural products harvesting business. He negotiated contracts with farmers and agricultural product packing companies in North Carolina and in Florida to harvest their crops. From November 1975 to April 1976, Wilson employed his brother, defendant Roscoe Wilson. Roscoe Wilson employed his own crew and was paid based on the amount of produce it harvested. Defendant William Bibbs also worked for Ivory Lee Wilson as a truck driver, fruit loader, field walker, and work recruiter.

Ivory Lee Wilson required his crews to live in housing that he provided. He charged each crewman $14.00 per week for housing though Wilson's North Carolina employers supplied the crewmen's accommodations free to Wilson and though nine to eleven crewmen were forced to live in a three room apartment owned by Wilson when they worked in Florida. Ivory Lee Wilson required the crewmen to eat at a

camp kitchen when they were in North Carolina. He charged each crewman $30.00 per week for meals consisting of sandwiches, grits, beans, pigs knuckles, and bologna. When the crews were in Florida, Wilson permitted them to shop in a local grocery store. Wilson did not permit the crewmen to pay directly for their groceries, however, but rather Wilson paid for the goods and then charged the crewmen for them. The crewmen were required to purchase any liquor they consumed from Wilson, who sold it at what the evidence discloses to have been exorbitant prices. Wilson also charged the crewmen for items such as pickers' sacks, gloves, clippers, water, and electricity. Wilson set off all these charges against each crewman's weekly paycheck. About 70% of the crewmen did not earn enough money during at least one week to pay the charges they incurred that week. Ivory Lee Wilson required these crewmen to endorse their entire payroll checks back to him.

In November 1975, defendant Bibbs hired victims Richard Lee Brown and Charles Vonzell Brown in Salisbury, North Carolina, promising them that they would be returned to Salisbury in a few days. The Browns quickly became indebted to Ivory Lee Wilson, and they attempted to leave his employ approximately 9 days after they began working for him. Defendants William Bibbs and Ivory Lee Wilson stopped the Browns with a gun. Wilson threatened to kill them and told them that they could not leave until they paid their debts. When Richard Lee Brown attempted to escape again with victim Elliot Johnson, Roscoe Wilson found them and had Bibbs and another man beat them. Although Brown suffered internal injuries in the beating, Ivory Lee Wilson forced him to work the next morning. Brown rode to the fields with the other workers, including Charles Vonzell Brown, and told them he had been beaten for attempting to escape. The Browns testified that they remained in Ivory Lee Wilson's employ because they feared for their lives.

Victim Elliot Johnson became indebted to Ivory Lee Wilson so soon after beginning

work for him that Johnson never received a paycheck. When Johnson was beaten for attempting to escape with Brown, Johnson's arm was fractured and his back was injured. Although Johnson eventually spent $400.00 in medical fees for these injuries, he went to work the next morning because he believed that he would be killed if he did not. Like Richard Lee Brown, Johnson told the other workers about his beating. Johnson testified that he did not attempt to escape again because he feared he would be physically harmed.

Victim Thomas Bethea was hired to work in North Carolina. Because he became indebted to Ivory Lee Wilson, Wilson threatened to beat him if he did not go to Florida with the crew. Bethea knew that Richard Lee Brown and Elliot Johnson had been beaten for attempting to escape, and he had witnessed Ivory Lee Wilson beat another person. Bethea was prevented from leaving the camp twice, once by defendant Bibbs, and he had been threatened with beatings. Bethea testified that he remained in Ivory Lee Wilson's employ only because he feared that he would be physically harmed if he attempted to leave.

The defendants urge that the district court erred in failing to grant a judgment of acquittal from their convictions. The defendants argue that their convictions are not supported by the evidence because each victim admitted that he had one or more opportunities to avoid continued service with the Wilsons. The defendants' argument is premised on an incorrect interpretation of the elements of involuntary servitude and ignores the standard governing appellate review of a denial of a motion for a judgment of acquittal.

■ The primary purpose for outlawing involuntary servitude was to abolish "all practices whereby subjection having some of the incidents of slavery was legally enforced." *United States v. Shackney,* 333 F.2d 475, 485 (2d Cir. 1964). In a prosecution for involuntary servitude, the law takes no account of the means of coercion. Various combinations of physical violence

and of threats of physical violence for escape attempts are sufficient. *Pierce v. United States,* 146 F.2d 84 (5th Cir. 1944), *cert. denied,* 324 U.S. 873, 65 S.Ct. 1011, 89 L.Ed. 1427 (1945); *Bernal v. United States,* 241 F. 339 (5th Cir. 1917), *cert. denied,* 245 U.S. 672, 38 S.Ct. 192, 62 L.Ed. 540 (1918). To hold otherwise would be to ignore reality. During the years slavery existed in this country, slaves often worked in the fields and went into town with little direct supervision, thereby offering them opportunities to escape. Yet it is beyond argument that the slaves were held in involuntary servitude. The slaves' servitude was enforced not only by state law, but also by the fear generated by public punishment of those who attempted to escape. *See generally,* B. Quarles, The Negro in the Making of America (rev. ed. 1970). Therefore, a defendant is guilty of holding a person to involuntary servitude if the defendant has placed him in such fear of physical harm that the victim is afraid to leave, regardless of the victim's opportunities for escape.

■ This Court must affirm the district court's denial of a motion for acquittal if, "viewing the evidence presented most favorable to the Government, a reasonable-minded jury could accept the relevant and admissible evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *Sanders v. United States,* 416 F.2d 194, 196 (5th Cir. 1969), *cert. denied,* 397 U.S. 952, 90 S.Ct. 978, 25 L.Ed.2d 135 (1970); *Weaver v. United States,* 374 F.2d 878, 881 (5th Cir. 1967). In the case on appeal, the Government presented more than sufficient evidence to satisfy this standard. The evidence established that each victim held to involuntary servitude attempted to escape Ivory Lee Wilson's employ on one or more occasions and was prevented from doing so by one or more defendants. Richard Lee Brown and Elliot Johnson were beaten for attempting to escape, and all the victims were threatened with bodily harm if they attempted to escape. Charles Vonzell Brown and Thomas Bethea, the victims who were not beaten, were aware that the defendants had beaten other persons who attempted to escape. Each victim testified that he did not leave Ivory Lee Wilson's employ because he feared that he would be physically harmed by the defendants. Finally, there was ample evidence that Wilson had a motive to keep each victim in his employ, to recoup money expended on them. Therefore, we hold that the defendants' convictions are supported by sufficient evidence.

The defendants next urge that their convictions be reversed because the district court admitted evidence on rebuttal concerning an inconsistent statement made by a defense witness. Defense witness Janet Boyd testified that she served T-bone steaks to the defendants' employees twice a week. Apparently this testimony was published in newspapers. On rebuttal, Raymond Coleman testified that Boyd told him on the morning after her appearance on the witness stand that she had not so testified. The defendants argue that Coleman's testimony was irrelevant and that Boyd should have been confronted with her statement before Coleman was permitted to testify concerning it. Because the defendants raised neither objection at trial, this Court will reverse the district court on the basis of these objections only if the district court's procedure constituted plain error affecting substantial rights. Fed.R.Crim.P. 52(b); *United States v. Garcia,* 531 F.2d 1303, 1307 (5th Cir.), *cert. denied,* 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976); *United States v. Fendley,* 522 F.2d 181, 186 (5th Cir. 1975).

■ Trial courts have wide latitude in ruling on evidentiary questions. *United States v. Partin,* 493 F.2d 750, 759 (5th Cir. 1974); *O'Brien v. United States,* 411 F.2d 522, 524 (5th Cir. 1969). In the defendants' reply brief, they refer to Janet Boyd as "a key defense witness" and state that her testimony "offered invaluable support to the defense."[1] The defendants introduced Boyd's testimony pertaining to the steaks to

---

1. Consolidated Reply Brief of Defendants-Appellants at 5.

refute the Government's evidence concerning Wilson's exorbitant food charges and concerning the victims' work conditions. Coleman's testimony was offered to impeach both the credibility of this "key defense witness" and her testimony concerning a relevant factor of the victims' employment. Therefore, the trial judge's failure to exclude this evidence sua sponte on the basis of irrelevancy was not plain error.

■ To support their argument that Boyd should have been recalled before Coleman testified, the defendants rely primarily on Rule 613(b) of the Federal Rules of Evidence, which establishes the procedure for impeachment of a witness by the witness' prior inconsistent statements, and on other authorities concerned with impeachment by prior inconsistent statements. This reliance is misplaced for two reasons. First, Rule 613(b) expressly applies only to prior inconsistent statements. Because the Federal Rules of Evidence do not provide a procedure for impeachment by subsequent inconsistent statements, the trial judge is free to fashion an evidentiary procedure that will "secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Fed.R.Evid. 102.[2] *See also* Fed.R.Crim.P. 2. Therefore, the district court was in no way bound by Rule 613(b) or by related authority.

Second, even if Rule 613(b) was applicable, it does not require that impeachment foundation precede the impeaching witness' testimony. Rule 613(b) merely requires that the impeached witness be "afforded an opportunity to explain or deny" the inconsistent statement. The Committee Comments to Rule 613(b) expressly state that the impeached witness' opportunity to deny

or explain should not be limited to cross-examination.

■ The traditional practice of requiring a foundation to be laid during cross-examination of the witness to be impeached had three objectives: (1) to avoid unfair surprise by giving the opposite party an opportunity to draw a denial or an explanation from the witness on redirect examination; (2) to give the witness himself an opportunity to deny or to explain the apparent discrepancy; and (3) to save time. The first and second objectives can be achieved by giving the witness an opportunity to explain or to deny a prior or a subsequent inconsistent statement at any time during the trial. The third objective, to save time, is relevant in the context of impeachment by prior inconsistent statements. The Committee Comments state, however, that even that objective is outweighed by countervailing considerations. Because counsel cannot lay a foundation for impeachment during cross-examination in the context of impeachment by subsequent inconsistent statements, the objective of saving time has even less significance in that context. *United States v. Barrett,* 539 F.2d 244, 254–56 (1st Cir. 1976); *Strudl v. American Family Mutual Insurance Co.,* 536 F.2d 242, 244–45 (8th Cir. 1976); *Hearings Before the Subcomm. on Criminal Justice on Proposed Rules of Evidence,* 93d Cong., 1st Sess., ser. 2, at 74–75 (Supp.1973); 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 613[02] (1975). The defendants in the case on appeal could have requested that Boyd be permitted to testify in surrebuttal or that their case be reopened. *United States v. Webb,* 533 F.2d 391, 395 (8th Cir. 1976); *United States v. Sadler,* 488 F.2d 434, 435–36 (5th Cir.), *cert. denied,* 417 U.S. 931, 94 S.Ct. 2642, 41 L.Ed.2d 234 (1974); *United States v. Doe,* 488 F.2d 93, 94 (5th Cir. 1973), *cert. denied,* 416 U.S. 991, 94 S.Ct. 2400, 40 L.Ed.2d 769 (1974). Therefore, the

---

**2.** Rule 102 was designed to allow "expansion [of the Federal Rules of Evidence] by analogy to cover new or unanticipated situations." Statement of Professor Cleary, Reporter for the Advisory Committee, *Hearings on Proposed Rules of Evidence Before the Subcomm. on Criminal Justice of the House Comm. on the Judiciary,* 93d Cong., 1st Sess., ser. 2, at 4 (1973).

Government's failure to recall Janet Boyd before introducing evidence concerning her subsequent inconsistent statement was not a reversible error.

■ The defendants' final argument is that the district court erred by applying Rule 609(b) of the Federal Rules of Evidence to exclude evidence of the named victims' and witnesses' criminal convictions more than ten years old. The defendants argue that the district court should have permitted them to introduce evidence concerning these convictions because a victim's character and condition of life, including his prior criminal activities, are relevant in determining whether that person was held to involuntary servitude by threats of beatings and the like. Although the defendants attempted to question several government witnesses concerning convictions more than ten years old, the defendants did not apprise the trial judge of any purpose for these questions other than impeachment until they attempted to question the final government witness. Because the defendants were not convicted of holding the final government witness to involuntary servitude, the trial judge's refusal to admit evidence of convictions more than ten years old is reversible error only if it was plain error affecting substantial rights. Fed.R. Crim.P. 52(b); *United States v. Garcia,* 531 F.2d 1303, 1307 (5th Cir.), *cert. denied,* 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976); *United States v. Fendley,* 522 F.2d 181, 186 (5th Cir. 1975).

Rule 609(b) provides that evidence of a conviction is not admissible to impeach a witness if more than ten years have elapsed since the date of the conviction or since the date of the witness' release from confinement for that conviction, whichever is later. Convictions more than ten years old may be admitted, however, if the trial court determines, "in the interests of justice," that the

probative value of the convictions outweighs their prejudicial effect.[3] In enacting Rule 609(b), Congress intended that trial judges be extremely cautious in admitting evidence of remote convictions. According to the Senate Judiciary Committee, "convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." S.Rep.No.1277, 93d Cong., 2d Sess. 4, *reprinted in* 1974 U.S.Code Cong. & Admin.News, pp. 7051, 7062.

■ The trial court in the case on appeal properly could have determined that the prejudicial effect of the convictions older than ten years outweighed any probative value they might have. It is questionable whether a person convicted of a crime or released from confinement at such a remote time is less frightened by threats of physical harm than a person who has never been convicted of a crime. Additionally, the defendants' attempts to question witnesses as well as named victims concerning convictions more than ten years old indicate that the defendants' original objective at trial was to impeach the Government's witnesses rather than to introduce evidence concerning an essential element of involuntary servitude. Therefore, the trial court's refusal to permit cross-examination concerning convictions more than ten years old was not plain error.

AFFIRMED.

---

**3.** For a conviction more than ten years old to be admissible, the proponent also must give the adverse party advance written notice of his intent to use that evidence. We need not consider this requirement of Rule 609(b) because we uphold the district court's finding that the prejudicial effect of the convictions outweighed their probative value.