UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank W. CATHEY,
Defendant-Appellant.

No. 77–5753.

United States Court of Appeals,
Fifth Circuit.

March 2, 1979.

Arthur J. Morburger, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Marsha L. Lyons, Asst. U. S. Atty., Miami, Fla., M. Carr Ferguson, Asst. Atty. Gen., Gilbert Andrews, Chief, App. Section, Robert E. Lindsay, Jared J. Scharf, Attys., James A. Bruton, Tax Division, Dept. of Just., Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge, and GODBOLD and FAY, Circuit Judges.

GODBOLD, Circuit Judge:

Frank Cathey was convicted by a jury on three counts of willful attempt to evade or defeat his federal income tax due for the years 1970, 1971 and 1972, in violation of 26 U.S.C. § 7201. He was sentenced to one year imprisonment on each count, the sentences to run concurrently, and a $5,000 fine on each count. The issues raised by Cathey on appeal can be grouped into three categories: (1) government misconduct before the grand jury; (2) Jencks Act material; and (3) introduction of a 16-year-old military conviction for larceny. We find no merit to the claims under the first two headings but conclude that it was prejudicial error to admit the military conviction into evidence. We reverse and remand.

## I. Government misconduct before the grand jury

### A. False statements

While testifying before the grand jury, special agent Derry of the IRS made three statements which defendant says were false, known to the government to be false, and material. Under *U. S. v. Basurto,* 497 F.2d 781 (CA9, 1974), defendant urges that the government had a constitutional obligation to inform court, counsel and grand jury about the statements and that its failure to do so requires dismissal of the indictment.[1]

In *Basurto,* the Ninth Circuit held that the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached. Whenever the prosecutor learns of any perjury committed before the grand jury, he is under a duty to immediately inform the court and opposing counsel—and, if the perjury may be material, also the grand jury—in order that appropriate action may be taken. *Id.* at 785–86. A subsequent Ninth Circuit opinion, *U. S. v. Bracy,* 566 F.2d 649 (CA9, 1977), *cert. denied,* — U.S. —, 99 S.Ct. 79, 58 L.Ed.2d 109 (1978), has not only cut

1. Under Fed.R.Crim.P. 12(b)(2) motions to dismiss an indictment must be made before trial or they are waived. Rule 12(f), however, excuses for good cause failure to move for dismissal prior to trial. Because defendant did not receive a transcript of Derry's grand jury testimony until after the trial began, he could not be expected to comply with Rule 12(b)(2). Cathey made his motion at the earliest possible time. We conclude that it was timely under 12(f). *U. S. v. Kaplan,* 554 F.2d 958, 970 n.7 (CA9), *cert. denied,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977).

back on the reach of *Basurto* but has also questioned its continuing validity.[2] This court has never decided whether to adopt the constitutional rule laid down in *Basurto*[3] or the modified rule of *Bracy*.[4] Nor do we decide that issue today. A prerequisite to the applicability of the *Basurto* rule is a finding that the government witness perjured himself. In the case before us the district court, doubtful whether there were any misstatements, concluded that, if there were, there was no evidence that Derry "deliberately attempted to mislead, certainly no evidence of perjury," a finding that can be reversed only if clearly erroneous. *U. S. v. Rhodes,* 569 F.2d 384, 389 (CA5, 1978); *U. S. v. Bagley,* 537 F.2d 162, 166 (CA5, 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed.2d 794 (1977). Our review of Derry's grand jury testimony supports the district court's conclusion. Absent a finding that perjury was committed, there is no basis for dismissing the indictment. *U. S. v. Sullivan,* 578 F.2d 121, 124 (CA5, 1978); *U. S. v. Guillette,* 547 F.2d 743, 753 (CA2), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977).

 Appellant's *Basurto* argument fails in a second respect. In the sense that they were about collateral matters, Derry's alleged misstatements were not material. The statements in question revolve around the agent's testimony concerning a recorded interview he had conducted with Cathey.[5] Derry testified that the defendant's "only explanation" why his bank accounts "far exceeded his gross income from all known sources" was that he had accumulated a large sum of money from dealing in currency exchange while stationed with the Air Force in Turkey. The transcript of the interview indicates that Cathey presented several explanations for the accumulated money in his bank accounts. Defendant claims that the statement limiting his explanation to currency dealings was material because in a tax fraud case based on net worth computations[6] the government must investigate and negate taxpayer explana-

---

**2.** The *Bracy* court thought that the Supreme Court's decision in *U. S. v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), though dealing with the prosecutor's duty to turn over exculpatory evidence to the defense when no request for the evidence has been made, undermined the *Basurto* rule. 566 F.2d at 655–56.

**3.** Judge Hufstedler, concurring in *Basurto,* rejected the majority's constitutional basis for its holding but embraced the result as a salutary exercise of an appellate court's supervisory power over the administration of criminal justice. *Id.* at 793 (Hufstedler, J., concurring).

**4.** *Cf. U. S. v. Sullivan,* 578 F.2d 121, 124 (CA5, 1978) (because there was no perjury, no basis for dismissing indictment); *U. S. v. Brown,* 574 F.2d 1274, 1276 (CA5), *pet. for cert. filed,* 47 U.S.L.W. 3148 (U. S. Sept. 9, 1978) (prosecution has no duty to present inconsistent statements of witnesses testifying before a grand jury).

**5.** Cathey seems to question the validity of the government's presentation of this evidence to the grand jury through Derry's testimony, rather than presenting the transcript of the interview, which was available at the time of the grand jury proceedings. While it may be preferable in such situations to present the transcript rather than the hearsay evidence, it is clear that an indictment based on hearsay is not constitutionally invalid. *Costello v. U. S.,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397

(1950); *U. S. v. Brown, supra* at 1276; *U. S. v. Cruz,* 478 F.2d 408, 410–11 (CA5), *cert. denied,* 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973); *see U. S. v. Chanen,* 549 F.2d 1306, 1311 (CA9), *cert. denied.,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977); *cf. U. S. v. Estepa,* 471 F.2d 1132, 1137 (CA2, 1972) (dismissal of indictment proper if government needlessly relied on hearsay as exercise of court's supervisory power). This court will dismiss an indictment based on hearsay only if the use of hearsay has impaired the integrity of the grand jury proceedings. *U. S. v. Cruz, supra* at 411.

**6.** This court recently defined the net worth method of proving a violation of 26 U.S.C. § 7201 in *U. S. v. Hiett,* 581 F.2d 1199 (CA5, 1978). The court stated that

"To establish unreported income under the net worth method, the government must establish the taxpayer's net worth at the beginning of the tax year in question. Then the government must establish the taxpayer's net worth at the close of the year. It subtracts the former figure from the latter to show the taxpayer's increase in net worth for the year in question. This figure is further adjusted by (1) adding to it the taxpayer's non-deductible personal expenditures for the year and (2) subtracting from it the taxpayer's allowable deductions."

*Id.* at 1200 n.1.

tions for cash on hand at the beginning of the computation period in order to establish a definite opening net worth, see *Holland v. U. S.,* 348 U.S. 121, 132–36, 75 S.Ct. 127, 133–36, 99 L.Ed. 150, 162–65 (1954); *U. S. v. Hiett,* 581 F.2d 1199, 1201 (CA5, 1978), and revealing that he gave several explanations might have brought to light that the government had not investigated all leads. Assuming that the *Holland* rule for net worth computation trials is applicable to the government's presentation of its case to the grand jury, the government's case against Cathey was computed on the premise that at the beginning of the government's computation period he had on hand the $55,000 cash hoard he claimed to have. The "one explanation" statement was, therefore, not material to the government's net worth computations.[7]

■ The second statement made by agent Derry that may have been misleading, because it was unresponsive, was in answer to a grand juror's question concerning the defendant's prior military conviction.

> Juror: Was that for the currency dealings he was convicted?
>
> Witness: He had several things going, currency exchange was part of it.

The government concedes that the defendant was not convicted for *currency* exchange violations but rather *military post-exchange* violations. We conclude, however, that the above statement is not material to an element of a § 7201 offense. Cathey argues that this statement combined with the first statement leaves the impression that he created the currency exchange lead for the cash hoard because it is a difficult source to investigate and refute. This is too strained an interpretation of the evidence.

■ The final statement in question occurred while Derry was testifying about Cathey's military career. He testified that he asked the defendant whether he was retired from the Air Force and recounted that Cathey said "No". In fact, Derry had asked the defendant whether he was retired from the Army. A "no" response to the Army question by the defendant was truthful, while a "no" response to the Air Force question was misleading. According to defendant, the grand jury may have inferred that he was trying to lead Derry away from discovery of his court-martial. Assuming that such an inference was drawn by the grand jury, it was not material to an element of the offense. Moreover, because Cathey concedes that the grand jury was entitled to be informed of his court-martial, any increased prejudice caused by the manner of informing the grand jury must be slight and certainly not of constitutional proportions.

Thus we agree with the district court's conclusion that dismissal of the indictment is not justified, because perjury was not proved and because the statements lacked materiality to the offense. But the presentation of the case to the grand jury is hardly commendable. Why the prosecutor elected to use Derry's hearsay account of his interview with Cathey rather than use the verbatim transcript of the interview we do not know. *See* note 5, *supra.* Use of the transcript would have avoided the problems discussed in this portion of our opinion.

### B. *Improper remark*

■ During the course of his grand jury testimony, Derry remarked that the defendant was "caught with his hand in the cookie jar." Inflammatory remarks made by a prosecutor justify the dismissal of an

---

7. In his reply brief, Cathey claims that the government's failure to provide the grand jury with all of his explanations for his cash hoard was relevant to the issue of willful evasion of taxes, a necessary element of a § 7201 violation. *See U. S. v. Hiett, supra* at 1200. He points to other testimony concerning his cash hoard to support his argument that the cash hoard testimony was used by the government to prove willfulness. Defendant, however, does not contend, nor is there any indication that the agent's testimony, other than the failure to give all of Cathey's explanations for the cash hoard, was erroneous. In such a case the false statement concerning the sources of a taxpayer's cash hoard is not material to the willfulness element of a § 7201 offense.

indictment if the improper remarks so biased the grand jurors that their votes were based on their bias. *U. S. v. Polizzi*, 500 F.2d 856, 887–88 (CA9, 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *U. S. v. Bruzgo*, 373 F.2d 383, 386–87 (CA3, 1969).[8] We agree with the district court that the remark was needless and improper. We also agree with the district court that the remark does not rise to constitutional proportions.

## II. Jencks Act material

■■■■■ Agent Derry testified at the trial. After he testified defendant's counsel requested all Jencks Act material. 18 U.S.C. § 3500. The government submitted Derry's reports to the district judge for *in camera* inspection. The district judge ordered production with the deletion of several portions of the report. The clearly erroneous standard of review applies to district court determinations of what material must be produced under the Jencks Act. *U. S. v. Beasley*, 519 F.2d 233 (CA5, 1975); *U. S. v. Graves*, 428 F.2d 196, 200 (CA5, 1970). We have examined the deleted portions of Derry's report and conclude that no error was committed in not ordering their production.

8. We assume for purposes of this case that inflammatory remarks made by an agent of the government, though not the prosecutor, can, if sufficiently grievous, justify the dismissal of an indictment.

9. The prosecution gave the defense advance notice of intent to use the prior conviction in the event defendant testified, as required by Fed.R.Evid. 609(b). *U. S. v. Bibbs*, 564 F.2d 1165, 1170 n.3 (CA5, 1977), *cert. denied*, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978).

10. The objections not reached in this opinion are: (1) a court-martial conviction is not a crime within the meaning of Rule 609; (2) admission of a court-martial conviction violates the defendant's right to trial by jury; (3) larceny is not a crime involving dishonesty; and (4) the district judge failed to specifically find that the probative value of the conviction substantially outweighed the prejudicial effect.

11. The standard of review for admission of evidence questions is abuse of discretion. *U. S. v. Cohen*, 544 F.2d 781, 784–85 (CA5), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2175, 53 L.Ed.2d 224 (1977).

## III. Admission of 16-year-old military conviction

■■■■■ The defendant testified, and on cross-examination the prosecution impeached his credibility by eliciting the fact of his prior military conviction for larceny.[9] The defendant has raised several objections to this use of his prior military conviction.[10] Because we conclude that under Fed.R.Evid. 609(b) the trial judge abused his discretion in admitting Cathey's 16-year-old conviction,[11] we do not reach his other objections.

■■■■■ While stationed in Turkey, Cathey was convicted by general court-martial of five specifications of theft of Air Force Exchange merchandise.[12] He was sentenced to two years hard labor, was released from military confinement June 31, 1961, and called to testify in October 1977. The prior conviction was therefore a little more than 16 years old when offered into evidence as measured by the standards of Rule 609(b). *See U. S. v. Cohen*, 544 F.2d 781, 784 (CA5), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2175, 53 L.Ed.2d 224 (1977).[13] Accordingly Rule 609(b)'s standard of admissibility for convictions over 10 years old applies:

> Evidence of a conviction under this rule is not admissible if a period of more than

12. He was also convicted of violating a military regulation, but the district court allowed only the use of the theft convictions, concluding that a conviction for violation of military discipline is inadmissible. This is in accord with the weight of authority. *U. S. v. Tomaiolo*, 249 F.2d 683, 693 (CA2, 1975); 2 Torcia, Wharton's Criminal Evidence § 475, at 436–37 (13th ed. 1973).

13. In *Cohen* we computed the age of the prior conviction from the time of the defendant's release from prison to the commencement of the trial. We see no reason to suggest departing from that approach, except to add a caveat that since the concern is the defendant's credibility when he testifies the correct point from which to measure backwards in time may be the date when he testifies rather than the date when the trial commences, which in a protracted trial might be considerably earlier. We have some doubt that *Cohen* intended to focus upon this difference.

ten years has elapsed . . . unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

■ As originally presented to Congress, Rule 609(b) made inadmissible all convictions over 10 years old. Although Congress amended the Rule to allow for the use of prior convictions over 10 years old in some circumstances, the legislative history makes clear that "convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." Sen.Rep. No. 1277, 93d Cong. 2d Sess. 4, *reprinted in* 1974 U.S.Code Cong. & Admin.News pp. 7051, 7062. Rule 609(b) must be interpreted in light of the gloss Congress placed on the Rule's standard of admissibility. We conclude that by use of the term exceptional circumstances Congress intended the courts to take account of the need for using a prior conviction as an essential element of the probative value—prejudicial effect balancing test mandated by Rule 609(b). The exceptional circumstances idea expressed in the legislative history responds to the "interests of justice" language of Rule 609(b).[14]

■ Before analyzing the factors that go into the balancing of the probative value against the prejudicial effect of a prior conviction under 609(b), we emphasize this court's conclusion in *Mills v. Estelle*, 552 F.2d 119, 120 (CA5), *cert. denied*, 434 U.S. 871, 89 S.Ct. 214, 54 L.Ed.2d 149 (1977), that 609(b) establishes a presumption against the use of more than 10-year-old convictions. The court's conclusion is supported by both the language of the Rule as well as the legislative history. Rule 609(b) makes over-age convictions inadmissible unless the court makes the required finding of probative value. The general rule, therefore, is inadmissibility. Moreover, in the Senate Report on the Rules of Evidence, the Senate noted that "convictions over ten years old generally do not have much probative value." Sen.Rep. No. 1277, 93d Cong. 2d Sess. 4, *reprinted in* 1974 U.S.Code Cong. & Admin.News pp. 7051, 7061. The presumption against admissibility is, therefore, founded on a legislative perception that the passage of time dissipates the probative value of a prior conviction. *Cf. U. S. v. Beechum*, 582 F.2d 898, 915 (CA5, 1978) (en banc) (Under Rule 404 "temporal remoteness depreciates the probity of the extrinsic offense"). The balancing scale Congress has given the courts is weighted against a finding that the probative value of a more than 10-year-old conviction substantially outweighs its prejudicial effect. Therefore, as this court stated in *U. S. v. Bibbs*, 564 F.2d 1165 (CA5, 1977), *cert. denied*, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978), "Congress intended that trial judges be extremely cautious in admitting evidence of remote convictions." *Id.* at 1170.

■ The prior convictions of a witness may only be used by the jury to evaluate the witness's credibility. In spite of the legal rule limiting the use of prior conviction evidence to impeachment purposes, when the witness is the accused the evidence is subject to improper use. *U. S. v. Martinez*, 555 F.2d 1273, 1275 (CA5, 1977) (quoting *U. S. v. Garber*, 471 F.2d 212, 215 (CA5, 1972)); *see Mills v. Estelle, supra* at 120. The jury may misuse the evidence by considering the defendant a person of criminal tendencies and, therefore, more likely to have committed the crime for which he is being tried, *Mills v. Estelle, supra* at 120, or if the prior conviction is similar to the new charges, the jury may misuse the prior conviction as evidence of guilt, *U. S. v. Martinez, supra* at 1275, or the jury may just be more willing to convict a person who already has been convicted for a different crime, *Mills v. Estelle, supra* at 120.[15]

---

**14.** The other possible interpretation of the legislative history is that Congress was prophesying that as an empirical matter courts will rarely conclude that the probative value of an over-age conviction substantially outweighs its prejudicial effect. This interpretation accounts for the "very rarely" language of the passage, but leaves unexplained what the "exceptional circumstances" are that justify the use of an over-age conviction.

**15.** In light of the potential for misusing prior conviction evidence, the *Martinez* court concluded that "the danger of unfair prejudice is

When the prior conviction is for a crime distinct from the charges for which the accused is currently being tried, as in this case, the potential for jury misuse of the evidence decreases. *U. S. v. Poteet*, 573 F.2d 351, 353 (CA5, 1978). Nevertheless, potential prejudice arising from the criminal tendency inference and the jury's willingness to convict an already once convicted person remains quite real.

We now turn to the probative value portion of Rule 609(b)'s equation. The probative value of a prior conviction is a function of at least two factors, the nature of the past crime and the remoteness of the conviction. Crimes involving dishonesty or false statement are often more probative of the witness's lack of credibility than even more serious crimes involving violence. Rule 609(a) incorporates this distinction between types of crimes. Whether this defendant's military conviction was for a crime involving dishonesty or false statement is a matter of dispute between the parties.[16] On the view we take of this case, it is not necessary to resolve this dispute. Assuming that the military conviction was for a crime involving dishonesty, that is insufficient justification, by itself, for use of the prior conviction. The presumption against the use of an over-age conviction is not so weak that it falls before a finding that the prior conviction was for a crime involving dishonesty. Judge Tuttle in *Mills*

*v. Estelle, supra*, noted that Rule 609(b)'s 10-year limit on prior convictions "could be conceptualized as a policy statement that if an offender keeps his record unblemished for ten years, he will be presumed to be as truthful as a normal citizen, i. e., that the ten-year period is evidence that the inference supporting use of prior crime impeachment evidence (a lawbreaker is likely to lie) can no longer be drawn about a certain person." *Id.* at 120. A crime involving dishonesty is more likely to overcome Rule 609(b)'s presumption, but more than that bare conclusion must be shown.

In *U. S. v. Cohen, supra*, we held that the district judge did not abuse his discretion when he allowed the prosecution to impeach the defendant with a 13-year-old conviction for mail fraud. *Id.* at 785. However, in *U. S. v. Bibbs, supra* at 1170, decided after *Cohen*, we recognized as an essential element of Rule 609(b) the necessity of showing exceptional circumstances justifying the use of an over-age prior conviction. Exceptional circumstances were not shown in the instant case.[17]

In the context of admissibility of over-age convictions exceptional circumstances includes, though it is not limited to, the need of the party offering the evidence to use it. This concept of necessity is relevant to the district judge's evaluation of the probative value of the conviction. Our

---

far greater when the accused, as opposed to other witnesses, testifies, because the jury may be prejudiced not merely on the question of credibility but also on the ultimate question of guilt or innocence." *Id.* at 1275.

**16.** Cathey contends that his military conviction was for petit larceny and that petit larceny is not a crime involving dishonesty. This court stated in *U. S. v. Carden*, 529 F.2d 443, 446 (CA5, 1976), *cert. denied*, 429 U.S. 848, 97 S.Ct. 134, 50 L.Ed.2d 121 (1977), that petit larceny involves dishonesty. This dictum was retracted in *U. S. v. Ashley*, 569 F.2d 975 (CA5, 1978), in which we concluded "that a conviction for shoplifting is not a conviction involving dishonesty or false statement within the meaning of Fed.R.Evid. 609(a)." *Id.* at 979. The cases relied upon by the court in *Ashley* recognize that certain crimes that are classified as petit

larceny involve dishonesty or false statement and that it is necessary to look at the basis of the conviction to determine whether the crime involved dishonesty rather than merely categorize the offense. *See, e. g., U. S. v. Papia*, 560 F.2d 827, 846–47 (CA7, 1977); *U. S. v. Hayes*, 553 F.2d 824, 827 (CA2), *cert. denied*, 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977) (quoting *U. S. v. Smith*, 179 U.S.App.D.C. 162, 178, n.28, 551 F.2d 348, 364 n.28 (1976)). *See also U. S. v. Seamster*, 568 F.2d 188, 190–91 (CA10, 1978).

**17.** A second decision bearing on the admissibility of over-age convictions decided after *Cohen* is *Mills v. Estelle, supra*, where we concluded that 609(b) creates a presumption against their admissibility. There is no indication that the *Cohen* court took this consideration into account.

recent en banc decision in *Beechum*, interpreting Fed.R.Evid. 404, provides us with guidance. Rule 404 like 609(b) calls on the judge to balance the probative value of the proffered evidence against its prejudicial effect.[18] In *Beechum*, the court stated that

> Probity in this context is not an absolute; its value must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference. It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice. Thus, if the Government has a strong case on the intent issue, the extrinsic offense may add little and consequently will be excluded more readily.

*Id.* at 914 (footnote and citations omitted). Therefore, when a party wishes to use an over-age conviction, the trial judge must consider whether the witness already has been impeached, and if so, the probative value of the prior conviction decreases accordingly.

In this case nothing suggests exceptional circumstances justifying the use of Cathey's prior conviction. The defendant's credibility had already been well impeached by the government's cross-examination during which he had been caught in various contradictions and numerous misstatements. There was little need to add the icing of his military conviction. The district court mentioned that on direct examination Cathey had testified to his accumulation of a cash hoard during his military career, and, of course, the court-martial for stealing occurred during his military service. Possibly the court considered the conviction as bearing on the credibility of defendant's claim that he had accumulated a cash hoard. If anything, the conviction of stealing at the time Cathey claimed he was accumulating his cash hoard, bolsters his credibility with respect to a hoard rather than impeaches it. Absent some additional factor justifying the use of the prior conviction, there is no basis for concluding that it falls within the exceptional circumstances caveat to the general prohibition against the use of a conviction more than 10 years old.

The government says the error was harmless. We cannot say that it did not influence the jury or that it had very slight effect. *Kotteakos v. U. S.*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The government argues that Cathey already had been caught in so many falsehoods on cross-examination that the additional blow could not have hurt. We agree that he had been well impeached, and, because he had, there was no need for the prosecution to use the 16-year-old conviction. The right to use evidence of prior convictions to impeach is tempered by the need to use it. It would be anomalous indeed to conclude that the less the prosecutor needs the evidence the freer he is to use it.

REVERSED.

FAY, Circuit Judge, dissenting:

This is a weak dissent in a very close case.[1] I agree wholeheartedly with Parts I and II of the majority opinion. While agreeing with those principles of law set forth in Part III, I respectfully dissent from the conclusion.[2]

---

18. The balancing test mandated by the two rules is different in one important respect. Under Rule 403, the court may exclude Rule 404 evidence "if its probative value is *substantially outweighed* by the danger of unfair prejudice . . . ." Fed.R.Evid. 403. Under Rule 609(b), on the other hand, an over-age conviction is admissible only if the conviction's "probative value . . . *substantially outweighs* its prejudicial effect." The test in Rule 609(b) is the mirror image of the test under Rule 403.

1. Paraphrasing my brother's dissent in *United States v. McCain*, 556 F.2d 253, 256 (5th Cir. 1977) (Judge Gee dissenting).

2. In computing the ten year period prescribed in Rule 609, it appears we are bound by the panel opinion in *United States v. Cohen*, 544 F.2d 781 (5th Cir. 1977) unless and until modified by the en banc court. The rule is stated as being that period running from the date of conviction or release from confinement, whichever is later, to the commencement of trial. If writing on a clean slate, it seems to me the most appropriate closing date would be that of the next succeeding alleged offense rather than commencement of trial. Any other formula serves to reward the felon for delaying prosecution by any means possible. If prior convic-

A review of the record convinces me that the able trial judge complied with the announced test as to the admissibility of the defendant's prior military conviction for larceny and did not abuse his discretion. Concluding that such evidence was admissible for impeachment purposes, I would affirm the convictions.

Certainly there is a "presumption against the use of an over-age conviction." Rule 609(b) clearly requires the trial judge to carefully analyze the conviction involved to ensure that the "probative value . . . substantially outweighs its prejudicial effect." In my opinion, the record in this case reflects just such scrutiny.

The majority finds an abuse of discretion since the "defendant's credibility had already been well impeached." It classifies the evidence of the military conviction as unnecessary "icing". My crystal ball is not that clear nor am I willing to play Monday morning quarterback in such a close call.

tions lose their probative value for impeachment purposes because of ten years of "good behavior", that is the period we should measure—the period of unquestioned good behavior.