# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-20274

United States Court of Appeals
Fifth Circuit

**FILED**

November 3, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

THUONG THOMAS-MORE VO, Also Known as Tom Tom;
HUNG VAN DANG, Also Known as Mark,

Defendants–Appellants.

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CR-340-3

Before REAVLEY, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Thuong Thomas-More Vo and Hung Van Dang appeal convictions of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20274

conspiracy to possess with intent to distribute ecstasy, cocaine, and marihuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C). They contend that incriminating audio recordings and text messages should have been suppressed as the fruits of an unlawful GPS search. Vo also claims that the district court erred by prohibiting him from cross-examining a witness about a more than ten-year-old felony conviction and that the evidence is insufficient to support his conviction. For the following reasons, we affirm.

I.

The convictions arose from the FBI's "Operation Iron Hide." After receiving a tip from a confidential informant, two confidential sources bought cocaine and ecstasy from Tay Luangpanh. As a result of the purchases, the FBI obtained authorization to wiretap Luangpanh's phone. The intercepts led to Luangpanh's supplier, Tai Nguyen ("Tai"), and his supplier, Thuong Nguyen ("Thuong"). The FBI received authorization to wiretap Tai's phones and, without a warrant, attached GPS tracking devices to Tai's and Thuong's cars.

The FBI intercepted twenty-three phone calls and twenty text messages between Tai and Vo. Officers testified that code-words such as "phone" and "food" were used to discuss the sale and purchase of ecstasy. For example, Vo told Tai that he needed to exchange "three defective phones for three new phones," and Tai replied, "Okay. But right now I have no more phones." In other conversations, Vo told Tai that "I need . . . a tiny little phone" and that "[Dang] said that he needs five phones to repair. . . . He needs to repair it right away." After one of Vo's acquaintances was stopped by police, Vo called Tai and said "Stop everything. Don't cook anymore. No one will eat it."

Officers observed meetings between Tai and Vo a few days after conversations about "repairing phones." Tai was never involved in the telephone or food business. Tai died before trial, but Thuong entered into a plea agreement

No. 13-20274

and testified that he supplied Tai with marihuana and between 1,000 and 8,000 pills of ecstasy each week.

## II.

Because defendants did not argue in the district court that the GPS search was unconstitutional,[1] we review their claim only for plain error. *United States v. Andres*, 703 F.3d 828, 834 (5th Cir.), *cert. denied*, 133 S. Ct. 2814 (2013). To demonstrate plain error, appellants must show an error that is clear or obvious and that affected their substantial rights. *Id.* (citing *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

The government contends that defendants cannot challenge the placement or use of the GPS devices because they had no legitimate expectation of privacy in Tai's and Thuong's cars.[2] "[C]apacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims [it] has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143–44 (1978). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Id.* at 130 n.1.

In *Rakas,* the Court held that mere passengers, "who asserted neither a property nor a possessory interest in the automobile searched nor . . . any legitimate expectation of privacy in the [areas of the car that were searched], were not entitled to challenge a search of those areas." *Id.* at 129. Furthermore, "a

---

[1] *See United States v. Jones*, 132 S. Ct. 945, 949 (2012) ("[T]he Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" (footnote omitted)).

[2] "This requirement is typically referred to as 'standing,' although the term is used 'for brevity's sake' and exists apart from the question of Article III standing. *See United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010)." *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011).

person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134.

Vo and Dang have failed to establish that their own Fourth Amendment rights were violated by the challenged search. Other than claiming the GPS assisted the FBI in identifying potential co-conspirators, they do not explain how they had a legitimate expectation of privacy in Tai's and Thuong's cars; they do not claim to have owned, traveled in, possessed, or even touched them. Because they have failed to assert any possessory or property interest that would result in a legitimate expectation of privacy, they cannot claim the protections of the Fourth Amendment.

Even if a defendant has standing, "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Davis v. United States*, 131 S. Ct. 2419, 2423–24 (2011). In *Andres*, 703 F.3d at 834, the defendant contended for the first time on appeal that "the warrantless placement and use of the GPS device to monitor the truck he was driving violated the Fourth Amendment." We held that "[i]n December 2009, it was objectively reasonable for agents operating within the Fifth Circuit to believe that warrantless GPS tracking was permissible under circuit precedent," and "the district court did not err in refusing to suppress the drug evidence." *Id.* at 834–35. The GPS search in this case took place between 2008 and 2009; Vo and Dang concede that *Andres* forecloses relief on their Fourth Amendment claim.

### III.

Vo claims that the district court erred by prohibiting him from crossexamining Thuong about 1997 felony convictions for armed robbery and

extortion. "An alleged violation of the Confrontation Clause is reviewed *de novo*, subject to harmless error review. If there is no constitutional violation, then the court reviews limitations on cross-examination for abuse of discretion, 'which requires a showing that the limitations were clearly prejudicial.'" *United States v. Heard*, 709 F.3d 413, 432 (5th Cir.), *cert. denied*, 134 S. Ct. 470 (2013) (citations omitted).

"The Confrontation Clause is satisfied where defense counsel has been allowed to expose the jury to facts from which the jury 'could appropriately draw inferences relating to the reliability of the witness.'" *Id.* (citation omitted). Evidence tending to show bias or motivation of a witness to testify is "of particular importance to the Confrontation Clause." *Id.* The right to cross-examination, however, is not unlimited—"[t]he district court has wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (internal quotation marks omitted).

Vo's Confrontation Clause rights were not violated. On direct examination, Thuong admitted that he was a drug trafficker and had served seven months for being a felon in unlawful possession of a firearm. He testified that he pleaded guilty of possession with intent to distribute ecstasy, was debriefed with the government, and was cooperating in the prosecution of Vo with an eye toward securing a reduction in his sentence.

Each defendant at trial, including Vo, subjected Thuong to extensive cross-examination. Thuong admitted to lying to his wife, children, mother, and co-workers about dealing drugs; to Tai, his close friend, about money and drugs; and to the government about the amount of drugs he had. He admitted to selling 30,000–40,000 pills of ecstasy and that he was testifying in hope that his potential twenty-year sentence and $1 million fine would be reduced.

No. 13-20274

It was clearly established that Thuong had served seven months for being a felon in possession of a firearm, that he was a drug dealer and a liar, and that he was testifying purely out of self-interest.  The district court instructed the jury that Thuong's testimony was "to be received with caution and weighed with great care."  Vo's Confrontation Clause claim fails because "[a] reasonable jury would not 'have received a significantly different impression of [Thuong's] credibility had [Vo] been permitted to pursue his proposed line of cross-examination.'" *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)).

Vo also maintains that the district court abused its discretion in refusing to admit the 1997 convictions under Federal Rule of Evidence 609(b), which sharply limits the admissibility convictions that are over ten years old.  "[T]he probative value of a conviction over ten years old is outweighed by its prejudicial effect."  *United States v. Estes*, 994 F.2d 147, 149 (5th Cir. 1993) (per curiam). "The general rule is inadmissibility."  *Id.*  "Congress intended that trial judges be extremely cautious in admitting evidence of remote convictions." *United States v. Cathey*, 591 F.2d 268, 275 (5th Cir. 1979) (internal quotation marks omitted).

Vo's argument is premised on incorrect interpretations of Rule 609 and the cases interpreting it.  *See United States v. Charles*, 366 F. App'x 532, 541–42 (5th Cir. 2010).  First, he claims that a "crime of moral turpitude [is] not subject to the 10-year exclusionary rule for prior convictions."  This is incorrect. *Id.* at 541.  Rule 609(b) applies a separate test for all convictions, even where "it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness."  Rule 609(a)(2).

Second, Vo claims that "where the admissibility of a remote conviction under Rule 609(b) is at issue, the weighing of probative value and prejudicial

6

effect must be made on the record." This is also incorrect. *Charles*, 366 F. App'x at 541–42. "It is only when the court admits evidence of a conviction over ten years old that the court must engage in a balancing test on the record." *Estes*, 994 F.2d at 149.[3]

Finally, Vo's conclusional assertion that extortion is a crime of moral turpitude does not explain how "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Rule 609(b). The district court did not abuse its discretion. *See Charles*, 366 F. App'x at 541–42.[4]

## IV.

Vo preserved his sufficiency-of-the-evidence challenge "by moving for a judgment of acquittal at the close of the Government's case and at the close of all evidence . . . ." *United States v. Shum*, 496 F.3d 390, 391 (5th Cir. 2007). Accordingly, we review the record *de novo* "to determine whether, considering the evidence and all reasonable inferences in the light most favorable to the

---

[3] In any event, the record shows that the court *did* perform a Rule 609(b) balancing test after considering the defense's argument that the 1997 convictions were indicative of untruthfulness. The court stated that "I just don't find that the exceptional circumstances exist in this case. And your ability to put before the jury the impact of sentencing exposure on his motivation to be truthful or not is not hampered in the slightest because it really doesn't matter that it is a prior conviction that increases his exposure. What matters is that his exposure is what it is."

[4] Vo, who is represented by counsel, cursorily makes the following arguments: The district court's certification of the case as complex resulted in a delay that pushed the 1997 convictions passed the ten-year mark but "did not tip the prejudice versus probative balance beyond that which would otherwise have mandated admission . . . under Rule 609(a)(1)(A)"; Vo should be allowed to expose the underlying felony because the government "opened the door by introducing evidence of [Thuong's] felon-in-possession offense"; and Vo's failure to provide reasonable written notice as required by Rule 609(b) was "because it was not known that [Thuong] would be a Government witness until a week before the trial." Because Vo fails to identify any legal authority in support of these contentions, they are waived. *See United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) (collecting cases on our appellate briefing requirements).

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[5]  "The essential elements of a drug conspiracy are (1) an agreement by two or more persons to violate the narcotics laws; (2) a defendant's knowledge of the agreement; and (3) his voluntary participation in the agreement."  *Vargas-Ocampo*, 747 F.3d at 303 (citing *United States v. Misher*, 99 F.3d 664, 667 (5th Cir. 1996)).[6]

The government presented numerous conversations in which Vo asked Tai for "phones" and "food."  The government presented evidence that Tai's business was not distributing telephones or food, but rather, ecstasy.  FBI officers testified that these terms referred to drugs and corroborated this evidence with testimony from Thuong, one of Tai's ecstasy suppliers.  Officers observed Vo and Tai meeting on two occasions shortly after conversations using these terms.  The jury was entitled to believe or disbelieve the testimony interpreting these terms, drawing inferences for or against Vo's knowing and voluntary participation in a conspiracy with others.  A reasonable jury could have found beyond a reasonable doubt that Vo conspired to violate narcotics laws.

The judgment is AFFIRMED.

---

[5] *United States v. Vargas–Ocampo*, 747 F.3d 299, 303 (5th Cir.) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)), *cert. denied*, 2014 U.S. LEXIS 5760 (2014).  Vo's brief notwithstanding, we abandoned the "equipoise" rule in *Vargas–Ocampo*.  *Id.* at 301.

[6] Vo repeatedly points out that he was never observed in possession of drugs.  Possession, however, is not a required element of a drug conspiracy.