Julian P. WAMMOCK,
Plaintiff-Appellee,

v.

CELOTEX CORPORATION, et
al., Defendants,

National Gypsum Company,
Defendant-Appellant.

No. 85–8608.

United States Court of Appeals,
Eleventh Circuit.

June 26, 1986.

William D. Barwick, Atlanta, Ga., Lawrence T. Hoyle, Jr., Philadelphia, Pa., for defendant-appellant.

Richard H. Middleton, Savannah, Ga., Ron L. Motley, Ann Zimmel, Michael J. Brickman, for Charleston, S.C., for plaintiff-appellee.

Before TJOFLAT and ANDERSON Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

This is an appeal from a jury verdict rendered below in favor of the appellee/plaintiff Julian P. Wammock in the amount of $40,000 in compensatory damages and $250,000 in punitive damages. Appellant National Gypsum Company attacks that verdict as being based upon erroneous evidentiary rulings and a generally unfair trial atmosphere. Having reviewed the record, we find no basis for upsetting the jury's verdict as to those two contentions. National Gypsum also challenges the punitive damages award as being based upon insufficient evidence. Because we perceive this contention as being grounded in uncharted considerations of state law, we certify this issue for initial determination by the Supreme Court of Georgia.

## I. THE PROCEEDINGS BELOW

This case might be described as a typical asbestos case. The appellee Julian Wammock was a life-long carpenter by trade, who throughout his career received various degrees of exposure to asbestos by working with and around the material. From the early 1940's when he worked in shipyards until 1978 when he retired from the construction industry, Wammock was exposed to asbestos produced by numerous manufacturers. As to National Gypsum products, his primary exposure was through contact with joint compound while installing wallboard. National Gypsum's joint compound has in fact contained asbestos in the past. [Record, Vol. 5, at 82].

Approximately three years after his retirement, the appellee was diagnosed as having asbestosis due to his continued exposure to asbestos. In that same year, Wammock brought suit against 16 entities, each either being a manufacturer or distributor of products containing the asbestos that allegedly contributed to the appellee's condition. The case eventually proceeded to trial in 1985 on theories of strict

liability and negligent failure to warn. Only National Gypsum remained for trial, all of the other defendants having been dismissed or having settled. The case was prepared in accordance with a Standing Order of the Southern District of Georgia regarding asbestos cases. Although a final pretrial conference was never held, prior to trial at a status conference the district judge apparently directed appellee's counsel to provide the defense with a witness list designating fact and expert witnesses and describing each expert's expected testimony. The list provided by appellee's counsel contained an entry for Dr. Gerritt Schepers listing him under the category of "Expert/Diagnostic Witnesses" and stating that he would "offer state of the art testimony and testimony on the general medical issues."

The matter proceeded to trial in May of 1985. The appellee presented numerous witnesses including himself and Dr. Schepers during the two-plus days it took to present his case. The appellant utilized the remainder of the third day to present its case, and the controversy was presented to the jury on the fourth day of trial. A general verdict as described above was returned that same day, and after the district court's denial of the appellant's motion for judgment notwithstanding the verdict, this appeal ensued.

Appellant National Gypsum raises three contentions on appeal. First, the appellant asserts that the lower court committed reversible error in excluding highly probative prior testimony of Dr. Schepers that was inconsistent with his trial testimony concerning the punitive damages issue. Second, National Gypsum asserts that the unfair and surprising trial tactics of plaintiff's counsel, when coupled with the trial court's undue haste to conclude the proceedings and with other irregularities at trial, led to an atmosphere so overwhelmingly prejudicial as to deny the appellant a fair trial. And last, the appellant contends that the evidence adduced at trial was insufficient to support a punitive damages award under Georgia law. We address the appellant's contentions *seriatim.*

## II. EXCLUSION OF DR. SCHEPERS' PRIOR INCONSISTENT TESTIMONY

The first issue in this appeal centers around the district court's refusal to allow the introduction of prior inconsistent statements made by Dr. Gerritt Schepers during appellant National Gypsum's case. Dr. Schepers, the former director of the Saranac Laboratory, testified on the second day of trial during the appellee's case-in-chief regarding numerous matters, including the general medical knowledge available as to the hazards of asbestos exposure from approximately the 1930's to date. On cross-examination, he also testified that sometime during the late 1950's, he corresponded with National Gypsum employees after learning from advertisements that the company was intending to incorporate asbestos into their gypsum products and that it would be "terrible" to "hide" asbestos in this manner in an otherwise safe product. Schepers testified that although he had no copies of the letters sent to National Gypsum, he nevertheless clearly expressed his concerns over the concept of incorporating asbestos into gypsum boards, which would be sawed and abraded, as well as into "the matching gook that fills in the cracks." [Rec., Vol. 6, at 259].

At the end of the third day of trial, immediately before the close of the defense's case, appellant National Gypsum sought to introduce transcripts of prior inconsistent testimony given by Dr. Schepers on three earlier occasions. On those three occasions, Dr. Schepers did not recall having any dealings with National Gypsum. Furthermore, in one instance he testified to having corresponded with *U.S.* Gypsum Company in regards to advertisements of products containing gypsum mixed with asbestos, not with *National* Gypsum Company, as he had testified the previous day. National Gypsum's counsel assured the lower court that he had no knowledge of Schepers' prior inconsistent statements during his examination the day before, and that only later did he learn of their exist-

ence after researching Schepers' testimony in other cases in light of this surprise testimony. Appellee objected to the introduction of the testimony indicating that he was unable to bring Dr. Schepers, who resides in Virginia, back to Savannah to clarify or explain the inconsistency. Wammock's counsel further represented to the court that if given the opportunity to explain, Schepers would testify that his recollection had been refreshed by documents presented to him during his direct examination tieing Saranac Laboratory to National Gypsum, documents that had not been available when he was testifying on the three previous occasions. Although reserving ruling, the court nevertheless opined that the solution was perhaps a telephone deposition that evening and observed that if Schepers could return, he would of course be permitted to testify the next day.

The following morning after hearing extensive argument, the district court refused to allow the admission of the prior inconsistent testimony. The court noted that although National Gypsum's trial counsel himself had no specific knowledge of this prior testimony, undoubtedly its national counsel and/or legal department did, and that perhaps the decision would be different were that not the case. The court went on to offer an alternative whereby the prior inconsistent statements would be admitted, if the defendant would stipulate to the jury that Dr. Schepers, if present, would testify that his recollection had been refreshed by his subsequent examination of the documents tieing Saranac Laboratory

to National Gypsum. Otherwise, inasmuch as Schepers had been present to testify earlier, the court in its discretion would refuse to allow introduction of transcripts of his prior statements without an opportunity for him to explain the inconsistency.

On appeal, National Gypsum urges that the three prior inconsistent statements were admissible both as substantive evidence under Fed.R.Evid. 801(d)(1)(A) and for impeachment purposes under Rule 613(b), and that the lower court was "simply wrong" in imposing a prior confrontation requirement antecedent to the use of the testimony. The appellant further asserts that the surprise nature of Schepers' trial testimony, coupled with its significance to the punitive damages issue, would at any rate justify the admission of his earlier statements on their own. Finally, National Gypsum contends that the true motivation for the lower court's ruling was its unreasonable and prejudicial haste to move the trial to a rapid conclusion.

 Focusing on the exclusion of Dr. Schepers' prior statements in relation to Rule 613(b),[1] numerous authorities have recognized that traditional foundation requirements have been modified by the modern rule. Traditionally, prior inconsistent statements of a witness could not be proved by extrinsic evidence unless and until the witness was first confronted with the impeaching statement. Rule 613(b) modifies this approach, however, by merely requiring that the witness be provided an opportunity to explain the statement at some point in the proceedings. There need

---

**1.** Appellant's argument that the prior statements were also admissible under Fed.R.Evid. 801(d)(1)(A) as substantive evidence need not be addressed separately. Under that rule, the definition of hearsay does not include the prior inconsistent statement of a witness if "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement." Prior statements are admissible under Rule 801(d)(1)(A) if: (1) the declarant testified at trial; (2) the declarant was subject to cross-examination regarding the statement; (3) the statement was in fact inconsistent; and (4) the prior statement was under oath. *See Alexander v. Conveyors & Dumpers, Inc.,* 731 F.2d 1221, 1230 (5th Cir.1984). The first, third and

fourth criteria were clearly met in this case. The appellant urges that the second criteria has been met here because the appellee had the option of recalling Dr. Schepers in rebuttal after admission of the prior statements, notwithstanding his failure to do so. We express no opinion as to whether the "subject to cross-examination" requirement in Rule 801(d)(1)(A) is co-extensive with the requirement in Rule 613(b) that the opposing party be "afforded an opportunity to interrogate," but rather assume as much in light of the appellant's argument. Our findings as to Rule 613(b) therefore foreclose any need for separate consideration of admissibility under Rule 801(d)(1)(A).

be no particular sequence or timing, so long as the witness has that opportunity to explain the statement. *See* Notes of Advisory Committee On Proposed Rules, Fed.R. Evid. 613; 10 Moore's Federal Practice, § 613.02, at VI–214 (1976 & 1985 Supp.). The Rule also permits the trial court some discretion to dispense with the opportunity to explain where "the interests of justice otherwise require." *See id.*

It is equally clear, however, that Rule 613(b) does not supplant the traditional method of confronting a witness with his inconsistent statement prior to its introduction into evidence as the *preferred* method of proceeding. *See United States v. Barrett*, 539 F.2d 244, 255–56 (1st Cir.1976); *Hearings Before The Subcomm. on Criminal Justice on Proposed Rules of Evidence*, 93d Cong., 1st Sess., ser. 2, at 75 (Supp.1973). In fact, where the proponent of the testimony fails to do so, and the witness subsequently becomes unavailable, the proponent runs the risk that the court will properly exercise its discretion to not allow the admission of the prior statement. *See Barrett*, 539 F.2d at 256. For this reason, most courts consider the touchstone of admissibility under Rule 613(b) to be the continued availability of the witness for recall to explain the inconsistent statements. *See United States v. McLaughlin*, 663 F.2d 949, 953 (9th Cir.1981) (lower court erred in excluding evidence of prior inconsistent statement where the witness could have been recalled to explain or deny the statement); *Strudl v. American Family Mut. Ins. Co.*, 536 F.2d 242, 244–45 (8th Cir.1976) (where the witness was recalled and given the opportunity to explain the prior inconsistent statement attributed to her, no error in admitting that extrinsic evidence); *Barrett*, 539 F.2d 256 (where the district court dismissed the extrinsic evidence out of hand and made no inquiry into the witness's availability for recall, the appellate court found no basis upon which to conclude that the witness was unavailable and held it was error to exclude the testimony). *See also United States v. McGuire*, 744 F.2d 1197, 1204 (6th Cir.1984) (where the defendants had the opportunity to call surrebuttal witnesses and would have made arrangements to recall the witness after his release had the matter been of "great importance," the court found no "reversible error" in admitting the extrinsic evidence of the witness's prior inconsistent statement).

While there are expressions to the contrary,[2] in *Wilmington Trust Co. v. Manufacturers Life Ins.*, 749 F.2d 694, 699 (11th Cir.1985), this circuit followed the *Barrett* line of authority. The court determined that where the party opposing the admission of extrinsic testimony of a prior inconsistent statement failed to request that the witness be recalled in surrebuttal to explain the statement or to request the reopening of its case, that party had "waived" the confrontation requirement under Rule 613(b). The import of *Wilmington Trust* is clear—if the witness is or might be available for recall and the opposing party simply fails to recall him,

---

**2.** Two recent cases do not fit easily into the mold of previous authority. In *United States v. Elliott*, 771 F.2d 1046, 1051 (7th Cir.1985), the court summarily rejected the defendant's contention that the lower court erred in refusing to admit evidence of a prior inconsistent statement made by a witness to his superior. Without considering the availability of the witness for recall, the court merely noted that no error transpired in excluding the superior's testimony inasmuch as the witness was not questioned about the remarks.

In *United States v. Leslie*, 759 F.2d 366, 380 (5th Cir.1985), the majority found no error in excluding extrinsic evidence of a witness's prior inconsistent statement to his attorney that allegedly contradicted his trial testimony. After the witness's attorney was excused as a witness, the district court on three occasions offered the defendant the opportunity to question the witness regarding his alleged prior statement. Because the defendant declined the opportunity on each occasion, the appellate court determined that the defendant waived his chance to have the witness explain or deny the statement, and that the extrinsic evidence was properly excluded. *Leslie* appears to run contrary to other authority because the witness clearly was available for recall by the party opposing the extrinsic evidence. At any rate, *Leslie* is not binding in this circuit and is being reheard by the Fifth Circuit. *See* 761 F.2d 195 (5th Cir.1985) (granting rehearing *en banc*).

there has been a sufficient *opportunity* to explain such that the extrinsic evidence should be admitted under Rule 613(b). Therefore, one key to the admissibility of the extrinsic evidence of the prior inconsistent statement is the availability of the witness for recall.[3]

### A. Dr. Schepers' Availability

In each of the cases cited above, including *Wilmington Trust,* the witness was either clearly available for further explanation or the court assumed that the witness could be recalled without extensive discussion of the availability issue. Although National Gypsum urges that likewise Dr. Schepers was available for recall and that the appellee simply failed to do so, we disagree. Having reviewed the record, we are persuaded that the district court implicitly found to the contrary and that finding was not erroneous.

In deciding whether to admit the prior inconsistent statements, the lower court clearly focused on the availability of the doctor as crucial to its inquiry. The court offered alternatives such as a telephone deposition, which never came to fruition. Furthermore, appellee's counsel represented to the court that the witness's whereabouts were not known subsequent to his appearance, a representation that the lower court apparently found credible in light of the witness's Virginia residence. In short, although the district court did not make a specific factual finding that the doctor was no longer available, its deliberations were clearly premised upon that finding. The lower court was in a superior vantage point to make such a determination, and we are not inclined to reach a contrary conclusion on this record.

This case differs, therefore, from each of the cases relied upon by the appellant in that here we are faced with the situation of an unavailable witness. The parties have not cited any case authority addressing the precise issue that results from that conclusion—review of a district court's discretion under Rule 613(b) to exclude prior inconsistent statements in "the interests of justice" where the witness is now unavailable.[4]

### B. Subsequent Discovery Of An Unavailable Witness's Prior Inconsistent Statements

We turn then to the question of whether the lower court abused its discretion in refusing to admit the prior inconsistent statements assuming that Dr. Schepers was not available for further examination or explanation. Judge Weinstein suggests that the trial court's discretion to dispense with the witness's opportunity to explain away the contradiction should rarely be exercised. The one "clear" situation to the contrary exists when "the statement came to counsel's attention after the witness testified and the witness, through no fault of counsel is not available to be recalled." 3 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 623[04], at 613–22 to –23 (1985). The appellant, of course, attempts to paint itself within this classic example by emphasizing that trial counsel had no knowledge of Dr. Schepers' prior inconsistent testimony until after he had testified and that the appellant was not responsible for his unavailability.

---

**3.** The rule does not indicate that the party introducing evidence of the inconsistent statement must afford the witness an opportunity to explain. It merely indicates that the witness must be afforded that opportunity. Thus neither side has the burden of recalling the witness; normally the impeaching party will not wish to do so.
3 J. Weinstein & M. Berger, Weinstein's Evidence, § 623[04], at 613–24 (1985).

**4.** Our own research has revealed only one case addressing the residual "interests of justice" pro-

vision in Rule 613(b). In *In re Corrugated Container Antitrust Litigation,* 756 F.2d 411, 415–16 (5th Cir.1985), the court found no reason to explore the parameters of the interests of justice equation because the impeachment value of the testimony at issue was so minimal that admission of the testimony clearly was not warranted. Inasmuch as the impeachment value in the instant case clearly was significant, *Corrugated Container* provides no guidance here.

As to the knowledge of appellant's trial counsel, the lower court found that he had no *specific* knowledge of the three previous inconsistent statements at the time Dr. Schepers was testifying, and we accept that finding. More importantly, however, it is clear that counsel did have sufficient knowledge of Schepers' past performance to immediately recognize that his trial testimony deviated substantially and significantly from that general body of testimony. Counsel's familiarity with Dr. Schepers as a witness, a "well-travelled and often used" plaintiff's expert who had testified numerous times on the state of medical knowledge concerning the hazards of asbestos exposure, is well borne out by the record. Counsel candidly admitted at trial that he was "astounded" by the nature of Dr. Schepers' testimony concerning his involvement with National Gypsum "where he ha[d] testified absolutely to the contrary before," [Rec. Vol. 7, at 339; Vol. 8, at 15], and that had he known that the doctor would answer as he did, the question would never have been asked. The problem, as we see it, is not that trial counsel learned of prior inconsistent statements by a witness after the witness testified. Rather, it appears from counsel's own admissions that he had sufficient knowledge to recognize the inconsistency while the witness was still on the stand, and failed to react in any discernible way to bring that discrepancy into issue while the witness was available.

In cases of true subsequent discovery, as in cases where the inconsistent statement occurs *after* the witness testifies, it is simply impossible to cross-examine the witness regarding the inconsistency while the witness is initially on the stand. *See United States v. Bibbs*, 564 F.2d 1165, 1169 (5th Cir.1977), *cert. denied*, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978). *Cf. Harre v. A.H. Robbins Co.*, 750 F.2d 1501, 1505 (11th Cir.1985) (counsel could not be faulted for failing to discover perjury during cross-examination where there was no discovery information to indicate testimony was false and perjury came to light only through witness's testimony at subsequent trial). In the instant case, however, trial counsel did not have such a complete lack of knowledge that would make questioning regarding the inconsistency impossible. Counsel understandably would have been hesitant to undertake extensive cross-examination without ready access to Dr. Schepers' exact prior testimony. Nevertheless, we are convinced that counsel had sufficient knowledge such that action of some kind was required, whether it be to generally inquire of the witness as to his unprecedented testimony or to alert the court to the fact that counsel sought to pursue the matter later after further preparation. Having failed to do either, counsel ran the risk that the witness would become unavailable, just as occurred here.[5]

5. The lower court appeared to premise its findings in a large part on the fact that National Gypsum was represented by counsel who was present when the earlier statements were given, and that therefore knowledge of the prior inconsistent statements was known by either the appellant's legal department or by national counsel. The appellant does not deny that national counsel (not present at trial) had knowledge of the statements, but urges that to hold trial counsel accountable for such knowledge would render asbestos cases financially unmanageable from a preparation standpoint, due to the sheer magnitude of the cases involved.

We recognize the unique nature of asbestos litigation in terms of numbers, *see Jackson v. Johns-Manville Sales Corp.*, 750 F.2d 1314, 1323 (5th Cir.1985) (en banc), and that it would be virtually impossible for trial counsel in each case to be intimately familiar with every instance of prior testimony in every other case. This is especially true in terms of a witness like Dr. Schepers, who has testified repeatedly throughout the country. Conversely, it can be argued that trial counsel, when properly prepared by national counsel, will be aware of the significant aspects of a witness's previous testimony and will be able to discern deviations therefrom. Furthermore, in regards to cost, to condone the introduction of prior statements simply because trial counsel had no knowledge of a specific prior inconsistency would make it virtually impossible for a plaintiff to release any witness until the close of the defendant's case. This in turn would greatly increase a plaintiff's litigation costs, especially where an expert witness is involved.

We need not resolve these competing interests under the facts of this case. Our decision is based upon the knowledge admittedly possessed by trial counsel, and we do not intimate what

The appellant seeks additional support from the fact that the appellee's pretrial witness list described Dr. Schepers solely as an expert witness. The contention is that the surprise *factual* nature of his testimony created a situation where the appellant was completely unprepared to respond, justifying the presentation of the prior transcripts after the witness had left the stand. The problem with this argument, of course, is that defense counsel did not bring this contention to the trial court's attention in a timely manner while Schepers was testifying by motion to strike or otherwise, waiting instead to first broach the issue the next day at the close of its case in the context of presenting the doctor's prior inconsistent statements. If the appellant found Dr. Schepers' factual testimony to be a problem, it was obligated to notify the trial court at the time it arose. *See* Fed.R.Evid. 103(a)(1). By failing to do so, opposing counsel and the court were essentially lulled into believing that there was nothing amiss as to Schepers' testimony, nor any reason in this regard to preserve his availability. *See Bibbs*, 564 F.2d at 1169 (one purpose of the traditional foundation requirement is to "avoid unfair surprise by giving the opposite party an opportunity to draw a denial or an explanation from the witness on redirect examination"); *McGuire*, 744 F.2d at 1203–04 (failure to put the defense on notice of prior inconsistent statement until after the witness was excused and had left town described by the court as a "questionable trial tactic"); 3 Weinstein, *supra*, at 613–24 ("The impeaching party would seem sufficiently to comply with the rule [Rule 613(b)] if he informs the court and opposing counsel at the time the witness testifies that he intends to introduce an impeaching statement and that his opponent may therefore prefer to keep the witness available to be called to explain it if he desires to do so."). In short, the time to object to the surprising factual nature of Schepers' testimony was while he was available, and having missed that opportunity, the appellant (perhaps unwittingly) contributed to his later unavailability.[6] This factor is relevant to the district court's discretion to exclude the prior statements under Rule 613(b).

On this record, we conclude that this case does not involve the type of subsequently discovered prior inconsistent statements that would require a lower court to admit those statements in the witness's later absence. Appellant's counsel admittedly had knowledge of both the expected substance of Schepers' testimony and his deviation therefrom as contrary to prior testimony. In addition, counsel's failure to timely raise the issue of the "surprising" factual nature of that testimony contributed to the witness's later unavailability. This is not a classic case of subsequently discovered prior inconsistent statements, the exclusion of which would be an abuse of discretion.

## C. Weighing The Interests Of Justice

Having concluded that this situation does not fall within the context of a subsequently discovered prior inconsistent statement, we nevertheless must consider whether there are additional factors under these circumstances as a whole, that mandate a finding of abused discretion in failing to

---

the result would be had trial counsel lacked even enough knowledge to recognize the surprising nature of the testimony.

**6.** Appellant alternatively urges that the plaintiff was to blame for Schepers' absence, citing a portion of the record where the trial court indicated to appellee's counsel that "you had better keep him" available. [Rec.Vol. 6, at 335]. This statement, however, arose at the end of the second day of trial in the context of whether Dr. Schepers would be needed as a rebuttal witness on the issue of the appellant's threshold limit value (TLV) defense. There was no indication

by appellant that Dr. Schepers' testimony would be challenged in the manner we are concerned with here, and the trial court was merely indicating to the plaintiff that if he desired to preserve Dr. Schepers as a rebuttal witness on the TLV issue, the witness should be kept available. By releasing Dr. Schepers, the appellee was consciously foregoing the option of having a rebuttal witness on the TLV issue; he was not aware that he was losing the opportunity to explain prior inconsistent statements by Schepers that would be introduced later. Under such circumstances, we cannot fault appellee for Schepers' later unavailability.

admit the transcripts of Dr. Schepers' prior inconsistent statements despite his unavailability. The appellant vehemently urges that the interests of justice required the admission of Schepers' prior testimony to prevent the jury from having an incomplete picture on a crucial issue. We perceive this argument as being bottomed in considerations of fairness—that the purpose behind Rule 613(b) is merely fairness to ensure that a witness has an opportunity to explain an apparent contradiction that may be explained away. *See Bibbs,* 564 F.2d at 1169; Notes Of Advisory Committee, *supra.* The appellant's argument here, by analogy, must be that Schepers' opportunity to explain may be dispensed with because the contradiction between his testimony is self-evident and simply cannot be explained. We do not agree.

In some circumstances, a prior statement may be so contradictory to a latter statement that the two simply cannot be reconciled. In such a case, there may well be no reason to exclude the prior inconsistent statement, regardless of the witness's unavailability. Such is not the case here. At trial, appellee's counsel informed the court that in fact, he had anticipated the problem that an apparent inconsistency would arise if Dr. Schepers identified National Gypsum rather than U.S. Gypsum in the context of correspondence regarding the hazards of mixed asbestos and gypsum products. Appellee's counsel informed the court that Dr. Schepers' prior testimony occurred in cases where his attention was not directed to National Gypsum, but other companies, and that his testimony then was that he did not "recall" dealing with any gypsum company but U.S. Gypsum Company. Furthermore, Dr. Schepers indicated to counsel that his memory had been refreshed by the contents of documents sent between Saranac Laboratories and National Gypsum. Those documents, which had already been admitted into evidence, were not presented to him for examination during any of his prior testimony.

Examination of Dr. Schepers' prior testimony, as well as the correspondence between Saranac and National Gypsum, reveals that this explanation is entirely plausible. The documents in question, Plaintiff's Exhibits 28–33, are documents sent between Saranac and National Gypsum, many bearing received stamps and the signature of Schepers' secretary. Furthermore, some of the correspondence was with a Mr. Pollard, identified by Schepers as National Gypsum's safety director who had attended a Saranac conference in 1955. Although the correspondence is not directed to Dr. Schepers himself, there does appear to be enough information in the documents relating to Saranac and National Gypsum, as well as in the circumstances of his prior testimony, to lend credence to his explanation that his recollection had been refreshed as he indicated to counsel.

The appellant argues that failing to admit the prior inconsistent statements left the jury with a mistaken impression as to Dr. Schepers' testimony. The argument stands up only if there is no explanation for the discrepancy. Assuming that there is a reasonable explanation for the inconsistency, doing away with the opportunity to explain could be the source of misimpression to the jury. Rule 613(b) inherently recognizes as much by ordinarily providing the witness with some opportunity to explain. We need not, and of course cannot, determine whether the doctor's memory was refreshed or whether, as the appellant contends, he simply testified incorrectly. But where there is a reasonable explanation for the prior inconsistent statement and the witness is no longer available to present it, the interests of justice do not necessarily weigh more heavily in favor of admitting the prior statement than excluding it.[7]

In sum, the district court was faced with inconsistent statements on significant testimony that might be explained were the witness still available. As noted earlier, defense counsel did not indicate that this

---

7. *See* 3 *Weinstein, supra,* ¶ 613[04], at 613–23 (court should not allow testimony as to an important issue that the court suspects the witness would deny or explain away if available).

matter would be raised subsequently so that the witness's availability could be preserved. The inconsistent statements were offered as the last item of the defendant's case, the day after the witness had testified, and all other testimony was concluded. Counsel also had failed to timely raise other objections to the witness's testimony, which if sustained would have obviated the need to utilize the prior inconsistent statements. Finally, the location of the witness was unknown, and despite appellant's assertion to the contrary, we find nothing in the record to indicate that recessing the trial and returning the witness to Savannah in a day or two was a viable option. Under such circumstances, we cannot find that the interests of justice required the admission of Dr. Schepers' prior inconsistent statements or that the district court abused its discretion in excluding that evidence.

## III. FAIRNESS OF THE TRIAL BELOW

The appellant points to an assortment of matters occurring at trial, including actions by both appellee's counsel and the trial judge, as support for its assertion that the proceedings below were so prejudicial as to render the trial fundamentally unfair. The appellant contends, *inter alia*, that appellee was allowed to offer numerous documents that had not been listed as exhibits and to present previously undesignated deposition testimony in contravention of the standing order. Furthermore, the appellant challenges various evidentiary rulings made by the lower court, arguing that the court in its haste was generally overly receptive to any evidence, allowing much irrelevant and inflammatory evidence to go to the jury. Finally, the appellant urges that the lower court's undue haste to conclude this case exacerbated these problems by allowing the proceedings to degenerate into a trial by ambush in which the appellant could not receive a fair trial.

■ To be sure, as the appellant observes, the days of trial by ambush have passed. *Shelak v. White Motor Co.*, 581 F.2d 1155, 1160 (5th Cir.1978). Having reviewed the record, however, we clearly find that no ambush occurred here. For example, the appellant urges that the lower court improperly allowed the admission of deposition testimony of Albert Hays, although the appellee had failed to "designate" that testimony in accordance with the court's standing order. While the appellee may have technically violated the order by not designating each page and line of Hays' deposition testimony that would be introduced, the witness list prepared prior to trial nevertheless listed Hays' deposition as a potential source of testimony. Consequently, we perceive neither prejudice nor surprise stemming from the admission of portions of this deposition, and in view of the technical nature of the violation of the standing order, we will defer to the lower court's method of handling the matter. *See F & S Offshore Inc. v. K.O. Steel Castings, Inc.*, 662 F.2d 1104, 1108 (5th Cir.1981); *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1549 (11th Cir.1984).

■ As to the lower court's desire to expeditiously proceed with this case, we recognize that perhaps the trial was not conducted under optimal conditions. No pre-trial conference was conducted, which, although permissible under Fed.R.Civ.P. 16, may have contributed to less-than-usual familiarity with evidence on counsel's part. But the lower court did not "elevate judicial expedience over considerations of justice and fair play," *see Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 348 (5th Cir.1982), as the appellant contends. Although the court continuously urged counsel to keep matters moving due to the need to finish the case, there is no indication in the record that any of the court's rulings were improperly influenced by undue haste.

Having reviewed the record in light of the appellant's other contentions, we find no basis upon which to conclude that the aggregate circumstances amounted to trial by ambush or that the trial was fundamentally unfair.

## IV. SUFFICIENCY OF THE EVIDENCE AS TO PUNITIVE DAMAGES

■ The appellant's final contention is that the evidence adduced at trial was insufficient to support an award of punitive damages under Georgia law. Finding a lack of authoritative guidance in Georgia law regarding the recoverability of punitive damages in asbestos cases such as here, we conclude that this matter should be considered in the first instance by the Georgia courts. We consequently have determined that this issue should be certified to the Supreme Court of Georgia.

We need not set forth our reasoning in detail, as our position is basically in accord with that of the Fifth Circuit as expressed in *Jackson v. Johns-Manville*, 750 F.2d 1314 (5th Cir.), *question certified*, 757 F.2d 614 (1985), *subsequent opinion*, 781 F.2d 394 (1986) (*en banc*). The *Jackson* court explored the unique nature of asbestos litigation in the context of punitive damages and determined that such cases were ill-suited to the recognition of a federal common law to displace state law. Finding that Mississippi law was unresolved as to punitive damages in this area, the court certified the issue to the Mississippi Supreme Court for an authoritative pronouncement of that state's law. 750 F.2d at 1328–29.[8]

This circuit has recognized the importance of state law in the asbestos context as well. *See Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1483 (11th Cir.1985); *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1508 (11th Cir.1985). In *Blackston*, finding indications in both federal and Georgia law to the contrary, we declined to create a presumption of exposure to a particular defendant's product once it had been shown that the defendant's asbestos products were used at the jobsite in question. While also agreeing that there was nothing in Georgia law

to justify imposition of such a presumption, the dissent in *Blackston* advocated certification of the question to the Supreme Court of Georgia.

Nothing in *Blackston* runs contrary to finding that certification is appropriate in the instant case. Here, we have absolutely no guidance from Georgia law on the question before us, and the significance of the punitive damages question as noted in *Jackson* certainly justifies resort to the certification process. In short, not every open issue under state law in asbestos cases is appropriate for certification, but we can perceive of none with a more far-reaching or significant effect than the punitive damages issue. Consequently, we will certify the question of the availability of punitive damages in asbestos cases as presented by the facts of this case to the Supreme Court of Georgia pursuant to Rule 36 of that court. *See also* Official Code of Ga.Ann. § 15-2-9 (Michie 1985).

In accordance with our usual practice, *see, e.g., General Telephone Co. of the Southeast v. Trimm*, 706 F.2d 1117, 1121 (11th Cir.1983); *Phillips v. Iglehart*, 558 F.2d 737, 738 (5th Cir.1977), we now request that counsel submit a joint statement of the facts and stipulated question to be certified to the Supreme Court of Georgia. We also find that additional briefs on the punitive damages issue would be advisable, with such matters to be addressed at the direction of the clerk. Upon receipt of counsel's response, we will transmit the formal certificate, along with the record and copies of any briefs filed in the case to the Supreme Court of Georgia. We do not intend to confine that court in responding to our inquiry in any manner by the precise form or scope of the question that will be presented.

## V. CONCLUSION

We find no error in the manner in which the trial below was conducted. The pro-

---

**8.** The Mississippi Supreme Court declined the certification. *See Jackson v. Johns-Manville Corp.*, 469 So.2d 99 (Miss.1985). Nevertheless, we still adhere to the sentiment of the initial *en* *banc* decision of the Fifth Circuit in affording the state court the opportunity to first rule on the question.

ceedings were not fundamentally unfair, nor were they conducted with undue haste. Furthermore, the district court did not abuse its discretion in refusing to admit the prior inconsistent statements of Dr. Schepers. As to the last issue, final determination of the appropriateness of the punitive damages award must await the Supreme Court of Georgia's response to our certification of the issue.

CERTIFIED.