[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12267
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-03018-AT,
Bkcy No. 1:09-bk-90842-WLH

In re:  JOSEPHINE GRADDY,

                                                                    Debtor.

_____

JOSEPHINE GRADDY,

                                                                    Plaintiff-Appellant,

versus

EDUCATIONAL CREDIT MANAGEMENT CORPORATION,

                                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 2, 2021)

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Josephine Graddy holds multiple degrees, and all that schooling was expensive. Under 11 U.S.C. § 523(a)(8), her student loans are not dischargeable unless excepting them from discharge would cause "undue hardship." The bankruptcy court found, and the district court agreed, that her Chapter 7 bankruptcy discharge did not rid her of those loans. Graddy appeals, but it is her burden to show undue hardship. Because she never did so, we affirm.

I.

Graddy attended New York University School of Law from 1994 to 1997. After graduating, she went into prosecution in New York City, but at $35,000 a year the income was not enough for New York City, especially considering her debt. After she became pregnant with twins, Graddy moved to Georgia, where her family was, and for two-and-a-half years in Homerville she was only able to get, in her words, "a little bit of work." Thereafter, Graddy worked for various law firms, until she decided she "had to change careers" and entered a master's program in cinematic arts at the University of Southern California. She graduated from that program in 2008, but the harsh economic climate meant that she had to return to Georgia, where her then-fiancé and now husband was living. And since then, she has worked in various legal jobs.

Whether from school or otherwise, Graddy ended up owing a substantial amount of money. The parties dispute exactly how much Graddy owes, what the

2

money was used for, and to whom she owes it, but one thing is beyond dispute: in her own words, Graddy "owe[s] student loan debt to somebody." And when Graddy initially filed for bankruptcy in 2009, she didn't seek to discharge those loans. She changed her mind, however, which is why she filed a motion to reopen this bankruptcy case in 2015.

The problem for Graddy was that, according to the Bankruptcy Code, her "educational benefit" loans were not dischargeable "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). She filed a complaint, seeking to show that her student loans would impose sufficient hardship. Her complaint asserted that some of the loans, "owed to or serviced by Educational Credit Management Corporation . . . , were incurred to pay expenses incurred in obtaining a degree from the University of Southern California in 2009," and made various statements alleging that their repayment would be an undue hardship. ECMC answered the complaint a month later.

ECMC asserted that it was owed about $389,000 in school loan debts by Graddy. To prove this, ECMC produced loan histories obtained from third parties and relied on its litigation specialist to provide the foundation to those third-party documents—the idea being to introduce these documents as business records. Graddy deposed the litigation specialist, who did not always know exactly how the third party who had compiled the loan history did so.

After considering the trial evidence (including the third-party documents), the bankruptcy court found that Graddy's student loans were non-dischargeable.

3

*First*, the court considered that Graddy had an average monthly income of around $8,600, and that the Pay As You Earn program would require Graddy to pay $673 at most per month for a $389,000 debt. *Second*, the court found that Graddy "has found adequate employment with both of her degrees," and did not show that she would be unable to repay her student loans in the future. And *third*, the court found that Graddy did not show that she had made a good faith effort to repay her student loans.

Graddy appealed to the district court. She appealed the bankruptcy court's consideration of the factors above. She also argued that the bankruptcy court improperly relieved ECMC of its burden of proof in showing that there is a non-dischargeable debt. As for discovery, she contended that the bankruptcy court improperly admitted third-party documents as evidence and that ECMC did not comply with proper discovery procedures. Finally, Graddy claimed that the alleged errors amounted to a violation of due process.

The district court affirmed. It first found that the bankruptcy court's handling of the parties' disclosures did not constitute reversible error. The district court then found that the third-party documents establishing the amount of student loan debt were properly admitted, but that in any event ECMC "did not have to prove the amount of the debt to meet its initial burden." And the district court found that Graddy did not show clear error for all three of the undue burden factors—which is what would be required to entitle her to reversal. In particular, the district court held that, even if the bankruptcy court was wrong to use the PAYE program as the standard for repaying the debt, it did not err in its findings as

4

to her ability to pay in the future and her good faith in attempting to repay the debt. As for Graddy's due process argument, the district court found that she waived it by not raising it at the bankruptcy court.

This appeal follows.

## II.

On appeal of a district court's affirmance of a bankruptcy order, "we review the bankruptcy court's decision." *In re Mosley*, 494 F.3d 1320, 1324 (11th Cir. 2007). We review the bankruptcy court's factual findings for clear error and its legal conclusions de novo. *Id.* And we review that court's evidentiary rulings for abuse of discretion, and only overturn those rulings if the defendants have shown that they had a "substantial prejudicial effect." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1265 (11th Cir. 2015) (quoting *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014)).

## III.

## A.

"The Bankruptcy Code provides that student loans generally are not to be discharged." *Mosley*, 494 F.3d at 1324. And, as Graddy said in the bankruptcy court, she "definitely took out student loans." There is a "narrow exception" for when "excepting such debt from discharge" would "impose an undue hardship on the debtor and the debtor's dependents." *Id.* (quotations omitted).

In *In re Cox*, this Circuit adopted the test from *Brunner v. New York State Higher Education Services Corporation*, 831 F.2d 395 (2d Cir. 1987), for determining whether a debtor has proved undue hardship. *In re Cox*, 338 F.3d

5

1238, 1241–42 (11th Cir. 2003).  The *Brunner* test requires the debtor to show: "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans."  *Id.* at 1241 (quoting *Brunner*, 831 F.2d at 396).  The debtor must prove by a preponderance of the evidence that all three *Brunner* factors are met.  *Mosley*, 494 F.3d at 1324.

Because neither party disputes the existence of a student loan under § 523(a)(8), the question before us is whether Graddy has carried her burden.  And this Circuit has previously noted that "the bankruptcy court's conclusion that repayment of the student loans would impose an undue hardship" is "a mixed question of law and fact."  *Id.*  In order to prevail, Graddy would have to show, by a preponderance of the evidence, that all three *Brunner* factors weigh in her favor.  *Id.*

She fails to do so.  She provides no controlling case law to show an error of law in the bankruptcy court's conclusion that she "failed to prove circumstances indicating a future inability to make payments on her student loans."  And she fails to reckon with the stringent nature of our standard—the inability to pay "must be likely to continue for a significant time, such that there is a certainty of hopelessness that the debtor will be able to repay the loans within the repayment

6

period." *Mosley*, 494 F.3d at 1326 (internal quotation marks and citations omitted).

Even if Graddy were to persuade us that the evidence she raised on this point was more convincing than the bankruptcy court thought it was, that is not enough for reversal. A factual finding is not clearly erroneous unless "this court, after reviewing all of the evidence, is left with the definite and firm conviction that a mistake has been committed." *Cox*, 338 F.3d at 1241 (alterations adopted) (quoting *Lykes Bros., Inc. v. U.S. Army Corps of Eng'rs*, 64 F.3d 630, 634 (11th Cir. 1995)). The bankruptcy court considered her work history, her employability, and her home and car ownership in reaching its conclusion. We cannot say that this was insufficient evidence to find a lack of "certainty of hopelessness."[1]

Because Graddy has not shown reversible error on the second *Brunner* factor, we need not consider the other two.

B.

Graddy also argues that the district court should have excluded some of the documents brought forward by ECMC based on an assortment of discovery and evidentiary claims, including the lack of initial disclosures, the alleged failure to bring various loan histories thirty days before trial, and the admission of third-party documents. She contends that these deficiencies made this case a trial by ambush. And in connection with those claims, she argues that the district court's alleged

---

[1] Graddy argues at length that ECMC had the burden of showing the amount of her student loans in this proceeding. But she never provides any controlling law to support that assertion. And, as ECMC notes, and as the district court observed in its order, the bankruptcy court only ruled that her loans were non-dischargeable—it granted no judgment as to the actual amount of the loans.

7

failures in its discovery and evidentiary rulings amounted to a violation of due process. For Graddy to prevail, these failures, if failures at all, must excuse her inability to show an entitlement to discharge. They do not.

*First*, to the extent that Graddy claims error in the admission of loan histories or third-party documents, any error would be harmless. Those documents were used to show the amount of debt Graddy owed to ECMC—and as mentioned earlier, ECMC was not required to show that. And what is more, the number arrived at—about $389,000—was, according to Graddy, "exponentially higher" than the real figure. But a higher number would only have strengthened her case to show that exemption from discharge would cause "undue hardship." That is not the sort of prejudice that would mandate reversal.

*Second*, Graddy has failed to show the sort of prejudice or surprise that would support her claim that the court proceedings were a trial by ambush. *Cf. Wammock v. Celotex Corp.*, 793 F.2d 1518, 1527 (11th Cir. 1986) (finding no "trial by ambush" where there was "neither prejudice nor surprise" from admitting the contested deposition testimony). Both the initial and pretrial disclosures are the sorts of matters that the trial court has leeway in handling. *See, e.g.*, Fed. R. Civ. P. 26(a)(1)(A) (initial disclosures are required except "as otherwise stipulated or ordered by the court"); *id.* 26(a)(3)(B) (pretrial disclosures must be made at least 30 days before trial "[u]nless the court orders otherwise"). And as the bankruptcy court noted, the process here was "almost like a rolling discovery" given the difficulty of retrieving some of the documents. Graddy has not shown error in the bankruptcy court's management of the case. *Cf. Wammock*, 793 F.2d at 1527 (no

trial by ambush even though "perhaps the trial was not conducted under optimal conditions").

And *third*, to the extent Graddy argues that the above alleged errors collectively amount to a violation of due process, she is not entitled to relief for dressing up old claims in constitutional garb. She does add an argument that the bankruptcy court's refusal to grant her motion to compel discovery was error. But that argument fails for the same reason as her others do—the "trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party." *Comm. Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984) (quoting *Hastings v. N.E. Indep. Sch. Dist.*, 615 F.2d 628, 631 (5th Cir. 1980)). Graddy has not shown that any of these alleged errors prejudiced her or that the bankruptcy court abused its discretion.

## IV.

We are sympathetic to Graddy's plight, but the Bankruptcy Code does not ordinarily offer respite for situations like hers. Because Graddy failed to meet her burden of showing undue hardship, the district court's judgment is **AFFIRMED**.