IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TYRELL REID, | § | |
| | § | |
| Defendant Below, | § | No. 478, 2024 |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 2112006478A/B |
| | § | (N) |
| Appellee. | § | |

Submitted: October 8, 2025
Decided: December 30, 2025

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en Banc*.

## **ORDER**

After consideration of the parties' briefs and the record on appeal, and after oral argument, the Court rules as follows:

(1) A Superior Court jury convicted Tyrell Reid of Murder First Degree, Assault First Degree, and Possession of a Firearm during the Commission of a Felony. The court sentenced Reid to life in prison and additional time. Reid appeals his convictions and claims two errors – an evidentiary issue involving impeachment evidence and the lack of a jury cautionary instruction about Reid's pre-trial custody status. After careful consideration, we find that the Superior Court did not exceed its discretion or err as a matter of law, and we affirm its judgment.

(2) On September 25, 2021, three individuals were shot on North Monroe Street in Wilmington, Delaware. Tyaire Anderson died from his injuries and two juveniles were wounded by stray bullets. The Wilmington police secured the crime scene and located video surveillance evidence. They spliced together video of the shooter's movements leading up to the incident, the shooting itself, and the immediate aftermath.

(3) Although the shooter masked his face, the police observed that he wore a black Nike hoodie on a hot day, walked in a peculiar manner with his toes pointed outward, wore distinctive sneakers, and spoke to two people immediately before the shooting. Police determined that the shooter was 5 feet 5 inches tall by measuring the height of a utility meter appearing next to him in the video. Reid was 5 feet 5 inches tall, was known to wear a black Nike hoodie even in hot weather, had distinctive Balenciaga sneakers, and had a distinctive walk that matched the shooter's walk.

(4) A grand jury indicted Reid for Murder First Degree, three counts of Possession of a Firearm During the Commission of a Felony, two counts of Assault First Degree, and Possession of a Firearm by a Person Prohibited. The Superior Court severed the Possession of a Firearm by a Person Prohibited into a "B" case. The "A" case proceeded to a five-day jury trial.

(5)     During trial, the State called Tahesha Brown, the mother of Reid's children, to testify.  During an interview with police, Brown told Detective Jones that she saw Reid with a gun on or about October 5, 2021, just 10 days after the shootings.  Before trial, the State redacted Brown's statement about the gun and agreed not to use that portion of the statement at trial.[1]

(6)     On cross-examination, however, Reid's counsel asked Brown whether she had "ever seen Tyrell walk with a firearm in his hand?"[2]  Brown answered "no."[3] The State objected and claimed that Reid's attorney had opened the door to Brown's prior inconsistent statement that she saw Reid with a gun.  Reid responded that Brown "did not previously state that she saw Mr. Reid walking with a firearm in his hand, which was the specific question the defense asked; counsel was focused on the walk."[4]  The following colloquy occurred at sidebar:

> [Prosecutor]:  But Your Honor, the defense can't ask on cross have you seen him walk with a firearm and then I have to get up on redirect and now say have you ever seen him with a firearm.  You can't say well, I limited it to a walk . . . .
>
> [Defense Counsel]:  That's fine.
>
> [The Court]: The door's open.  Go ahead.

---

[1] App. to Appellant's Opening Br. at A531-33 [hereinafter A___].

[2] A531.

[3] *Id*.

[4] A533.

3

[Prosecutor]: Okay.

[Defense Counsel]: That's fair. Ask her that.[5]

(7)     On redirect, the State asked if Brown had ever seen Reid with a gun. She denied that she had. The State followed up by asking if Brown told Detective Jones in an interview that she had seen Reid with a gun. She testified that she did not recall making the statement. The State asked Brown a third time if she ever saw Reid with a gun in her "20 years with him."[6] She said she did not remember seeing him with a gun and did not remember making that statement to Detective Jones.

(8)     The State recalled Detective Jones to the stand and asked about Brown's prior statement. Reid objected, arguing that Detective Jones' testimony was hearsay. The State countered that Brown's statement to Detective Jones was admissible as a prior inconsistent statement under Delaware Rule of Evidence 613. Reid changed course and asserted that a greater foundation was required to establish the inconsistency. Eventually, Reid returned to a hearsay objection – Detective Jones' statement was "hearsay because it's an out-of-court statement offered for the truth of the matter asserted . . . ."[7] The court overruled the objection. Reid did not request

---

[5] *Id.*

[6] A535.

[7] A637.

4

a limiting instruction on the use of Detective Jones' testimony.

(9)   Detective Jones related Brown's interview statement that she saw Reid with a gun on or around October 5, 2021.  He also testified that she described the gun as "black" and "without a wheel, which [he] knew to be a semi-automatic."[8] Detective Jones also testified that, while Reid was held in the Howard R. Young Correctional Institute in lieu of bail following his arrest, police monitored Reid's prison communications to understand where he was during the shooting.  The State introduced Reid's calls from prison in which he discussed several alibis.  Reid's attorney did not object to the questions.

(10)   The jury found Reid guilty of all charges.  The Superior Court found Reid guilty in the "B" case.  Reid was sentenced to life in prison and additional time.

(11)   On appeal, Reid argues that the Superior Court exceeded its discretion by admitting extrinsic evidence of Brown's prior inconsistent statement through Detective Jones.  According to Reid, the State should have first confronted Brown with her prior inconsistent statement during direct examination.  Reid also argues that the Superior Court erred by failing to *sua sponte* instruct the jury not to consider Reid's custody status when reaching its verdict.

---

[8] A638.

(12)  We review a trial court's evidentiary decision to determine whether the court exceeded its discretion.[9]  A court exceeds its discretion when it exceeds the bounds of reason given the circumstances or ignores recognized rules of law or practice as to produce injustice.[10]

(13)  The parties agree that the admissibility of Brown's statement to police is controlled by Delaware Rule of Evidence 613(b).  Under Rule 613(b), "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."

(14)  In *Robinson v. State*, this Court reviewed the use of a prior inconsistent statement for impeachment purposes.[11]  Before Rule 613(b), to admit a prior inconsistent statement of the witness, the cross-examiner had to "establish a foundation for introducing extrinsic evidence . . . by questioning the witness about the circumstances when the statement was made and verifying that the witness made it;"[12] and to "reveal the content of the prior statement to the witness before

---

[9] *McGuiness v. State*, 312 A.3d 1156, 1190 (Del. 2024); *Burrell v. Delaware*, 332 A.3d 412, 424 (Del. 2024).

[10] *Strickland v. State*, 328 A.3d 286, 297 (Del. 2024); *McGuiness*, 312 A.3d at 1190.

[11] 3 A.3d 257, 262-64 (Del. 2010).

[12] *Id.* at 262.

questioning[, eliminating] the element of surprise."[13]

(15)  As we explained in *Robinson*, however, Rule 613(b) modified the foregoing approach by requiring only that "the witness be afforded *at some time* an opportunity to explain or deny the prior statement and to be available for further interrogation."[14]  Although the traditional sequencing procedure is the "preferred methodology," we held in *Robinson* that the witness's explanation "may occur on direct examination or redirect examination, cross-examination or at any other point in the trial."[15]  In other words, "[t]here need be no particular sequence or timing, so long as the witness has that opportunity to explain the statement."[16]

(16)  Here, Brown testified that she had not seen Reid with a gun and could not recall telling Detective Jones she had previously seen Reid with a gun.[17]  Through Detective Jones, the State introduced extrinsic evidence of her prior

---

[13] *Id.*

[14] *Id.* (emphasis added).  This Court has stated F.R.E. 613(b) is identical to D.R.E. 613(b).  This Court further explained "F.R.E. 613(b) and subsequent case law interpreting that rule reflect that the strict sequencing procedure . . . is now unnecessary under the Federal Rules of Evidence."  *Id.* at 264.

[15] *Id.* at 264.

[16] *Id.* (quoting *Wammock v. Celotex Corp.*, 793 F.2d 1518, 1521-22 (11th Cir. 1986)).  *See also Givens v. State*, 2017 WL 2465195, at *3 (Del. June 6, 2017) (TABLE) (a trial judge does not exceed their discretion applying Rule 613 when the witness being impeached is "given the opportunity to explain her prior inconsistent statement, and defense counsel [is] permitted to question her about the statement.").

[17] A535-36.

inconsistent statement. Brown was still subject to the trial subpoena.[18] Thus, Brown was available "at some time" "to explain or deny" her prior statement and was "available for further interrogation" if Reid thought it was advantageous to do so.

(17)    Reid argues that Detective Jones' testimony was hearsay and therefore inadmissible. After *Robinson*, however, Rule 613(b) allows the State to introduce extrinsic evidence of a prior inconsistent statement through the testimony of another witness.[19] What is necessary, and as occurred here, is the witness's availability and opportunity to explain the prior inconsistent statement at any time, not just during her direct testimony. The Superior Court did not err by allowing Detective Jones to testify about Brown's prior inconsistent statement.[20]

---

[18] A544.

[19] *See U.S. v. Pridgen*, 518 F.3d 87, 91 (1st Cir. 2008) (district court erred under Rule 613(b) by excluding extrinsic evidence of a defendant's prior inconsistent statement to an investigator); *see also U.S. v. Cisneros-Gutierrez*, 517 F.3d 751, 763 (5th Cir. 2008) (district court did not exceed its discretion by allowing an agent's testimony to impeach defendant's prior inconsistent statements).

[20] Reid argues that *Givens* and *Wammock* support his position because, according to Reid, the State needed to introduce Brown's prior inconsistent statement while she was on the stand. We disagree. In *Wammock*, the Eleventh Circuit held the district court did not exceed its discretion by excluding an expert's prior inconsistent testimony because the expert was not available to explain or clarify his inconsistency. 793 F.2d at 1521-23. In *Givens*, this Court held that a tape recording of a prior inconsistent statement was admissible under Rule 613(b) because the witness was given an opportunity to explain herself. 2017 WL 2465195, at *2-3. Neither case required the State to introduce the inconsistent testimony through the same witness. Instead, the witness making the inconsistent statement must have the opportunity to explain the inconsistency. *Wammock*, 793 F.2d at 1522-23 ("[I]f the witness is or might be available for recall and the opposing party simply fails to recall him, there has been a sufficient *opportunity* to explain such that the extrinsic evidence should be admitted under Rule 613(b).").

(18) Reid raises two additional issues on appeal that were not preserved by an objection at trial. According to Reid, the trial court should have *sua sponte* given the jury limiting or cautionary instructions about its use of (a) Detective Jones' impeachment testimony, and (b) knowledge of Reid's pretrial incarceration status.

(19) Under Supreme Court Rule 8, we will only review unpreserved objections "in the interests of justice." The interests of justice are implicated when plain error occurs. Plain error exists when "the error complained of [is] clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[21] Further, "the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[22]

(20) We have held that "[t]he trial court's failure to, *sua sponte*, provide a limiting instruction is generally not plain error."[23] We see no reason to depart from the general rule here. The court gave the jury a general instruction regarding how it

---

[21] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[22] *Id.*

[23] *Pinkston v. State*, 2018 WL 6575420, at *2 (Del. Dec. 12, 2018) (TABLE). *See also U.S. v. Martin*, 63 F.3d 1422, 1429 (7th Cir. 1995) ("While such an instruction is proper and certainly should typically be given when requested, a court does not ordinarily commit plain error when it fails to do so absent such a request.").

should consider unsworn statements, including statements that were "inconsistent with the witness's in-court testimony."[24] The court instructed the jury that it "must decide whether an out-of-court statement is credible, or believable, and how much weight it should be given."[25] Reid suffered little, if any, prejudice by the lack of a limiting instruction.

(21) Regarding Reid's incarceration status, it is entirely possible that Reid's counsel did not request a limiting instruction for strategic reasons. It was apparent from the testimony that Reid was making phone calls from prison. Defense counsel could have decided that it was better not to call further attention to his pretrial detention.[26] In any event, Detective Jones' reference to Reid's custody status was not *per se* prejudicial.[27] Although a limiting instruction requested by defense counsel

---

[24] A827-28, A878. The court gave the jury the following instruction: "The evidence in this case has included an unsworn statement claimed to have been made by a witness before their testimony here at trial. Under Delaware law, this type of statement is admissible regardless of whether it is consistent or inconsistent with the witness's in-court testimony. As with any other evidence, you must decide whether an out-of-court statement is credible, or believable, and how much weight it should be given. If you conclude that there is a conflict between a witness's in-court testimony and their out-of-court statement, you may take that conflict into account when you decide the credibility and weight of the out-of-court statement. A conflict is particularly important if there is no evidence to corroborate, or confirm, the inconsistent, out-of-court statement. However, you may convict solely on the basis of such a statement if, after judging the statement's credibility and giving it the weight you believe it deserves, you find beyond a reasonable doubt that the defendant committed the crime charged." A878.

[25] A878.

[26] *See Purnell v. State*, 254 A.3d 1053, 1101 (Del. 2021) (no plain error review for waived claims).

[27] *Green v. State*, 238 A.3d 160, 185 (Del. 2020) (it is not *per se* prejudicial if the jury learns the defendant is in custody during trial).

would have been preferred, Reid has failed to point to any specific prejudice he suffered in this case.[28]  Thus, the Superior Court did not plainly err by not giving the jury a limiting instruction related to Reid's custody status.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[28] *See id*. (defendant must identify "the actual prejudice he suffered."). This Court has declined to find plain error when a trial court fails *sua sponte* to give a limiting instruction with respect to a defendant's past convictions for crimes of dishonesty. *Williams v. State*, 796 A.2d 1281, 1290 (Del. 2002). Without a showing of actual prejudice, the absence of a limiting instruction here falls short of plain error.